**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KEEPER SECURITY, INC., | ) | |
| | ) | Case Number:  1:23-cv-01043 |
| Plaintiff, | ) | |
| | ) | Judge Robert W. Gettleman |
| v. | ) | |
| | ) | Magistrate Judge Maria Valdez |
| KEEPER TAX INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER

Defendant Keeper Tax Inc. ("Keeper Tax" or "Defendant") for its answer to Plaintiff's

("Keeper Security" or "Plaintiff") Complaint states as follows:

1.      Keeper has used the trademarks KEEPER® in connection with its cybersecurity business since at least 2009. Keeper has marketed, advertised, and promoted the KEEPER® trademark through the expenditure of significant time and effort over the years to establish extensive goodwill and consumer recognition in the KEEPER® trademark.

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 1.

2.      Keeper Tax started using and introduced into the market the term "keeper" on its computer application, website domain, mobile application, and website content.

**ANSWER**:    Admitted.

3.      Keeper Tax's use of the name "keeper" in association with its goods and services is willful infringement of the KEEPER® trademark and Keeper Tax is trading off the goodwill established in the mark.

**ANSWER**:    Denied.

4.      This Complaint includes claims for trademark infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1051 et seq. (the "Lanham Act"); for false designation of origin and unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); for trademark dilution in violation of 15 U.S.C. § 1125(c); for state common law trademark

infringement; and unfair competition.

**ANSWER**:    Admitted that the Complaint in this action purports to state the claims

described in Paragraph 4.  Denied that the purported claims have merit.

### THE PARTIES

### Keeper Security, Inc.

5.    Keeper Security, Inc. is a Delaware corporation having its principal place of
business located in Chicago, Illinois.

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 5.

6.    Keeper is in the business of developing, marketing and selling cybersecurity
software. Keeper is a leading cybersecurity company that provides software and applications that
protect the integrity of numerous businesses and consumers through safeguarding sensitive user
information and mitigating the risk of data breaches. Keeper utilizes a proprietary, secure and
convenient password manager and digital vault to protect its customers' critical data and
passwords.

**ANSWER**:    Admitted that Plaintiff markets and offers for sale cybersecurity software

which includes a password manager and digital vault.  Keeper Tax lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations in Paragraph

6.

7.    Keeper has created the world's most downloaded and preloaded password security
and management solution for mobile devices and computers.

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 7.

8.    Keeper sells a software product called "Keeper" for managing user passwords and
private information. Keeper protects users against cybercriminals with a secure and convenient
password manager. Users' passwords, logins, credit card numbers, bank accounts and other
personal, sensitive, information are saved in a private digital vault that is encrypted and
unbreakable.

**ANSWER**:    Admitted that Plaintiff offers for sale cybersecurity software which

includes a password manager and digital vault. Keeper Tax lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations in Paragraph 8.

9. The KEEPER® trademark is associated with the Keeper products and applications sold on various platforms and internet portals.

**ANSWER**: Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 9.

10. Keeper markets its products under the KEEPER® trademark. Keeper's products have been downloaded by millions of online users and preloaded by global mobile operators and mobile device manufacturers who recognize that Keeper is a leader in cybersecurity and the leader in password management. Online users have come to associate the "Keeper" software product with Keeper and recognize that it is the leading product in password management

**ANSWER**: Admitted that Plaintiff markets its products under the KEEPER trademark.

Keeper Tax lacks knowledge or information sufficient to form a belief about the truth of the

remaining allegations in Paragraph 10.

11. Keeper is the assignee and owner of the entire right, title and interest in the trademark "KEEPER", United [sic.] Trademark Registration No. 3,965,190 (the "KEEPER®" trademark). (Registration Certificate attached as Exhibit A).

**ANSWER**: Admitted that Plaintiff is listed as the owner of record of U.S. Trademark

Registration No. 3,965,190 according to the online database of the U.S. Patent and Trademark

Office. Keeper Tax lacks knowledge or information sufficient to form a belief about the truth of

the remaining allegations in Paragraph 11.

12. The KEEPER® trademark was registered with the United States Patent and Trademark Office ("USPTO") on May 24, 2011.

**ANSWER**: Admitted.

13. The KEEPER® trademark was assigned to Keeper on November 21, 2011.

**ANSWER**: Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 13.

14.     Keeper has standing to sue for any damages and injunctive relief related to the KEEPER® trademark under the Lanham Act, Section 32(a).

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 14.

### Keeper Tax Inc.

15.     Keeper Tax is a Delaware company with its principal place of business located in San Francisco, California.

**ANSWER**:     Admitted.

16.     Keeper Tax provides an internet-based tax software and application for people with contracting and freelance income.

**ANSWER**:     Admitted.

17.     Keeper Tax operates the website www.keepertax.com.

**ANSWER**:     Admitted.

18.     Keeper Tax seeks to compete with Keeper by providing internet-based services using the name "keeper." Keeper Tax entered the market using the "keeper" name years after Keeper introduced its KEEPER® trademark into the market.

**ANSWER**:     Admitted that Keeper Tax began operations after the date Keeper Security

claims to have begun using KEEPER as a service mark.  Otherwise denied.

19.     Keeper Tax advertises and sells its products and applications on platforms such as the Apple App Store and Google Play Store, as well as other internet portals, using the term "keeper" in direct competition with the KEEPER® trademark.

**ANSWER**:     Admitted that Keeper Tax advertises its services and application on

platforms such as Apple App Store and Google Play Store, as well as on its internet website,

using the mark KEEPER.  Otherwise denied.

### JURISDICTION AND VENUE

20.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b), 15 U.S.C. § 1121 and other applicable statutes as the claims arise from the Lanham Act. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §

1367.

**ANSWER**:    Admitted.

21.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Keeper resides in Illinois, Keeper Tax is a Delaware corporation residing in California and the amount in controversy exceeds $75,000.

**ANSWER**:    Denied that this Court has subject matter jurisdiction under 28 U.S.C. §

1332, because both Keeper Tax and Keeper Security are incorporated in Delaware.

22.    To the extent Keeper's claims arise from Illinois statutory and/or common law, this Court has proper ancillary jurisdiction and supplemental jurisdiction in accordance with 28 U.S.C. § 1367(a) in that the state law claims have a logical relationship to the aggregate core of operative facts relating to Keeper's claims under the Lanham Act. The state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

**ANSWER**:    Keeper Tax is not contesting the application of supplemental jurisdiction

under 28 U.S.C. § 1367(a).

23.    This Court has personal jurisdiction over Keeper because Keeper is a corporation conducting business in this state and is in this district.

**ANSWER**:    Admitted.

24.    This Court has personal jurisdiction over Keeper Tax because Keeper Tax is a corporation conducting business in this state and in this district.

**ANSWER**:    Admitted.

25.    Keeper Tax conducts business through the website www.keepertax.com. Keeper Tax's products and applications are available for purchase through its website, including to Illinois residents of this judicial district.

**ANSWER**:    Admitted.

26.    Keeper Tax has known of Keeper's intellectual property rights and continued to use the KEEPER® trademark to benefit from the goodwill and reputation of Keeper. By doing so, Keeper Tax has intentionally caused harm to Keeper in this district.

**ANSWER**:    Denied.

27.    Keeper Tax has purposefully and willfully directed its intentional misuse and

infringement of the KEEPER® trademark in the State of Illinois (where Keeper is located), with knowledge that Keeper's injury would occur in the State of Illinois.

> **ANSWER**:     Denied.

28.     This Court has personal jurisdiction over Keeper Tax, as Keeper Tax is engaged in trademark infringement, unfair competition and trademark dilution directed at (and/or which has caused damage to) persons and entities residing in, located in or doing business in this district.

> **ANSWER**:     Keeper Tax is not contesting this Court's personal jurisdiction over it.

Otherwise denied.

29.     Keeper Tax conducts business over www.keepertax.com, including with customers in this district. Keeper Tax transacts business in the state of Illinois, and in this judicial district by, among other things, selling software and applications that provides tax services to residents of Illinois.

> **ANSWER**:     Admitted.

30.     Keeper Tax has purposefully availed itself of the privilege of conducting business in this judicial district and has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being sued in a court in Illinois.

> **ANSWER**:     Admitted.

31.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

> **ANSWER**:     Admitted.

32.     Keeper resides in the state of Illinois and conducts business in this jurisdiction.

> **ANSWER**:     Admitted, with the understanding that "resides" has the specific meaning

defined by 28 U.S.C. § 1391(c).

33.     Keeper Tax conducts business through the website https://www.keepertax.com. Keeper Tax's products are available for purchase through this website, including to residents of this judicial district.

> **ANSWER**:     Admitted.

34.     Keeper tax has purposefully and willfully directed its intentional misuse and infringement of the KEEPER® trademark at the State of Illinois (where Keeper is located), with knowledge that Keeper's injury would be felt in the State of Illinois.

**ANSWER**:    Denied.

35.    Keeper Tax is an entity which is transacting business in Illinois and because [sic.] a substantial part of the events giving rise to the claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been and is being carried out in the Northern District of Illinois.

**ANSWER**:    Admitted.

## BACKGROUND FACTS

36.    United States Federal Trademark Registration No. 3,965,190 for the KEEPER® trademark is set forth below: [image omitted]

**ANSWER**:    Admitted.

### The KEEPER® Trademark

37.    The KEEPER® trademark has become incontestable due to Keeper's continuous use of the trademarks for over five years since the mark was granted federal registration on May 24, 2011. Keeper filed a Declaration of Incontestability with the USPTO of the KEEPER® trademarks under Section 15.

**ANSWER**:    Admitted, with the understanding that "incontestable" has the specific

meaning described in 15 U.S.C. § 1065.

38.    Keeper also owns broad common law rights to the KEEPER® trademark as a result of its investment over the years in marketing, advertising and promotion. KEEPER® is symbolic of extensive goodwill and customer recognition built-up through its significant expenditures of time and effort by Keeper.

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 38.

39.    Keeper maintains a website at www.keepersecurity.com. The KEEPER® trademark has been prominently displayed in association with Keeper's cybersecurity products: [images omitted].

**ANSWER**:    Admitted that Keeper Security maintains a website at

www.keepersecurity.com.  Keeper Tax lacks knowledge or information sufficient to form a

belief about the truth of the remaining allegations in Paragraph 39.

40.    An example of the use of the KEEPER® trademark is set forth on its website www.keepersecurity.com:  [image omitted]

**ANSWER**:    Admitted that the image below Paragraph 40 in the Complaint reflects a

portion of the main page at www.keepersecurity.com on or about the time of this Answer.

41.    The KEEPER® trademark is also used in connection with mobile devices: [image omitted]

**ANSWER**:    Admitted that the image below Paragraph 41 in the Complaint reflects a

portion of the page at www.keepersecurity.com/download.html?t=m on or about the time of this

Answer.

42.    Keeper has won awards for innovation such as being named winner of the "Most Innovative in Endpoint Security Award," the "Hot Company in Identity and Access Management" and "Cutting Edge Security Company of the Year" awards during RSA Conference 2021.

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 42.

43.    Keeper was granted awards for the CEO of the year, CTO of the year and "Hot Company of the Year" at the Global InfoSec Awards during the RSA Conference 2022.

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 43.

44.    Keeper's products are the highest rated in the industry across G2, Trustpilot, PCMag and U.S. News & World Report. For the last several years, Keeper has received several InfoSec Awards from Cyber Defense Magazine for its cybersecurity enterprise software.

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 44.

45.    Keeper has been named PC Magazine's Best Password Manager of the Year & Editors' Choice, PCWorld's Editors' Choice and is the winner of four G2 Best Software Awards and the InfoSec Award for Best Product in Password Management for SMB Cybersecurity.

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 45.

46.     The KEEPER® trademark has been prominently displayed in association with the awards granted to Keeper, its products and applications.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 46.

47.     The Keeper product is available over the Internet and various "app" stores, including Apple's App Store. The Keeper product has received thousands of five-star ratings on various app stores. For example, the latest version has received a 4.9-star rating (out of 5 stars) among user reviews on Apple's App Store:  [images omitted]

**ANSWER**:     Admitted that as of the date of this Answer, the Keeper Security "Keeper

Password Manager" product shown in the images following Paragraph 47 is available on Apple's

App Store and has a 4.9-star rating on that App Store.  Keeper Tax lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations in Paragraph

47.

48.     The KEEPER® trademark appears in association with the Keeper product and with Keeper Security on application platforms such as the Google Play Store as demonstrated at: https://play.google.com/store/apps/details?id=com.callpod.android_apps.keeper.

**ANSWER**:     Admitted that as of the date of this Answer, the Keeper Security "Keeper

Password Manager" product is available on the Google Play Store at the URL stated in

Paragraph 48.

49.     The KEEPER® trademark appears in association with the Keeper product and with Keeper Security on the Microsoft application platform: [image omitted]

**ANSWER**:     Admitted that as of the date of this Answer, the Keeper Security "Keeper

Password Manager" product shown in the image following Paragraph 49 is available on the

Microsoft application platform.

50.     Annually, Keeper spends millions of dollars on marketing and advertising of the KEEPER® trademark and to promote its product and company via Google search, the Apple App Store, the Google Play Store, public relations, outdoor advertising and other digital media.

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50.

51.    Through Keeper's extensive marketing and advertising, Keeper has obtained high rankings in the various app stores and Google search to be the first application and/or company listed when searching the word "keeper."

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51.

52.    The promotion has worked, as Keeper is the first hit on a google search:  [image omitted]

**ANSWER**:    Keeper Tax is unable to evaluate the truth of the allegation in Paragraph 52, because Google results for the same search can differ between searchers according to a number of factors such physical location and personal search history of the searcher.

53.    The KEEPER® trademark is prominently displayed on outdoor billboards in 11 states including in this district:  [image omitted]

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53.

54.    Keeper has also advertised on television. One of Keeper's 2014 television commercials is available on YouTube at: https://youtu.be/z2EPjDqDShA.

**ANSWER**:    Admitted that the YouTube video at the listed URL appears to be a video commercial for Plaintiff's services.  Keeper Tax lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 54.

55.    The KEEPER® trademark has never been abandoned and the registration is in full force and effect and has become incontestable pursuant to 15 U.S.C. § 1065.

**ANSWER**:    Admitted that U.S. Trademark Registration No. 3,965,190 has become "incontestable" under the specific meaning described in 15 U.S.C. § 1065.  Keeper Tax lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations

in Paragraph 55.

56.     The KEEPER® trademark was first used in commerce in 2009 in relation to computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 56.

57.     The KEEPER® trademark has been associated with Keeper's computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data products since 2009.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 57.

58.     The KEEPER® trademark has achieved secondary meaning in the relevant market.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 58.

59.     The KEEPER® trademark is distinctive of the computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data products and, in the minds of the consumers, their [sic.] primary significance serves to identify the source of the product and have become distinctive of the products.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 59.

60.     The KEEPER® trademark has become notorious and famous.

**ANSWER**:     Denied.

### Keeper Tax's Improper Use of the "keeper" Trademark

61.     Keeper Tax is a service that helps independent contractors track work-related expenses that may qualify for tax deductions.

**ANSWER**:     Admitted, with the correction that the Keeper Tax also provides tax filing

services for its subscribers.

62.     Keeper Tax was co-founded Paul Koullick and David Kang.

**ANSWER**:     Admitted.

63.     Keeper Tax has recently rebranded its product from Keeper Tax to just the name "keeper" in association with its products.

**ANSWER**:     Admitted that in October of 2022 Keeper Tax rebranded its services and

app from "Keeper Tax" to "Keeper."  However, this was a return to a previous brand, as Keeper

Tax had branded is services under the name "Keeper" from November 2018 through June 2019.

64.     The rebranding efforts using only the name "keeper" demonstrate that Keeper Tax recognizes the value of the KEEPER® trademark. The rebranding is a willful effort by Keeper Tax to profit from the goodwill Keeper has established in the KEEPER® trademark.

**ANSWER**:     Denied.

65.     Keeper Tax maintains a website at www.keepertax.com. The improper use of the term "keeper" by Keeper Tax is set forth on its website www.keepertax.com:  [images omitted]

**ANSWER**:     Admitted that Keeper Tax maintains a website at www.keepertax.com.

Otherwise denied.

66.     Keeper Tax promotes its product using the term "keeper" in product advertisement:  [image omitted]

**ANSWER**:     Admitted.

67.     Keeper Tax is using the term "keeper" on its products, domain name, mobile applications and webpage content with complete disregard for the KEEPER trademark.

**ANSWER**:     Admitted that Keeper Tax is using the term "keeper" on its products,

domain name, mobile applications and webpage content.  Otherwise denied.

68.     Keeper Tax has made a conscious and concerted effort to pass off its product as being associated with the KEEPER® trademark and using the KEEPER® trademark to trade its product.

**ANSWER**:     Denied.

69.     Keeper Tax competes with Keeper using the KEEPER® trademark.

**ANSWER**: Denied.

70. Keeper Tax's action amounts to the willful theft of the KEEPER® trademark.

**ANSWER**: Denied.

**Evidence of Confusion Caused by Keeper Tax**

71. Keeper Tax competes directly with Keeper.

**ANSWER**: Denied.

72. The Keeper Tax "keeper" product is displayed next to the KEEPER® trademark in the Apple App Store when a search of the word "keeper" is entered: [image omitted]

**ANSWER**: Admitted.

73. Similarly, the two products appear next to each other in the Google Play Store when the term "keeper" is entered into the search parameter: [image omitted]

**ANSWER**: Admitted.

74. Keeper Tax, through the use of the "keeper" name, is attempting to skew the search results toward Keeper Tax's product and away from Keeper in the various app stores.

**ANSWER**: Denied.

75. Use of the term "keeper" by Keeper Tax is likely to cause confusion with the KEEPER® trademark.

**ANSWER**: Denied.

76. Keeper Tax, through the use of the "keeper" name, has adversely and materially impacted Keeper's sales of Keeper's own product in the app stores. Additionally, Keeper Tax's actions have impacted the volume of website traffic and associated revenues of Keeper

**ANSWER**: Denied.

77. Use of the term "keeper" by Keeper tax has caused actual confusion with the KEEPER® trademark. There have been several instances of actual confusion between the Keeper Tax use of the "keeper" name and the KEEPER ®trademark.

**ANSWER**: Keeper Tax lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 77.

78.     Keeper has received numerous calls and emails to its customer support team thereby confusing Keeper with the Keeper Tax product and company. The instances of confusion are clearly related to Keeper Tax's use of the "keeper" mark.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 78.

79.     Keeper has recorded numerous instances where people have contacted Keeper requesting support for the Keeper Tax product. This shows actual confusion due to Keeper Tax's use of the "keeper" mark.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 79.

80.     Keeper has also recorded instances where Keeper Tax customers have contacted Keeper complaining about the Keeper Tax product. For example, Keeper received an email complaint stating: "I want a new keeper the one I have now doesn't respond waste of money."

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 80.

81.     In addition, Keeper received an email stating: "Please delete my account and any and all personal information I have collected with Keeper Tax" and "I'd like to delete my keeper tax account altogether." There have been several other instances where customers of Keeper Tax have contacted Keeper requesting that they delete their account due to the fact that they were upset with the Keeper Tax product.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 81.

82.     Instances of actual confusion between the Keeper Tax product and the KEEPER® trademark have increased recently.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 82.

## COUNT I:  FEDERAL TRADEMARK INFRINGEMENT
### (Lanham Act Section 32(a))

83.     Keeper incorporates all prior allegations as if set forth fully herein.

**ANSWER**:     Keeper Tax incorporates by reference its responses to all prior paragraphs.

84.     This Court has jurisdiction over the subject matter of this claim, this being a claim of trademark infringement arising under the Trademark Laws of the United States as codified in 15 U.S.C. § 1051 et seq.

**ANSWER**:     Admitted.

85.     Keeper owns United States Trademark Reg. No. 3,965,190 in the mark "KEEPER."

**ANSWER**:     Admitted that Plaintiff is listed as the owner of record of U.S. Trademark

Registration No. 3,965,190 according to the online database of the U.S. Patent and Trademark

Office.

86.     The KEEPER® trademark is fanciful and arbitrary and is associated in the mind of the public exclusively with Keeper Security, Inc.

**ANSWER**:     Denied.

87.     Based on Keeper's extensive advertising, sales and the wide popularity of the KEEPER® mark, the KEEPER® trademark has obtained Federal Trademark Registration so that any product and advertisement bearing such trademarks is immediately associated by purchasers and the public as being a product of, and affiliated with Keeper Security, Inc.

**ANSWER**:     Admitted that there is a Federal Trademark Registration, No. 3,965,190,

for the mark KEEPER.  Otherwise denied.

88.     Keeper Tax copied or otherwise imitated the KEEPER® trademark in connection with selling, distributing and advertising Keeper Tax's products and applications.

**ANSWER**:     Denied.

89.     Keeper Tax's activities set forth herein constitute use in commerce of the KEEPER® trademark and are likely to cause confusion to consumers.

**ANSWER**:     Denied.

90.     Keeper Tax has used the "keeper" mark without Keeper's consent or authorization. Keeper Tax's use, including the sale and distribution of infringing products and applications in interstate commerce, has caused actual confusion and is likely to cause confusion and mistake in the minds of the public, leading the public falsely to believe that Keeper Tax's products and applications emanate or originate from Keeper, or falsely to believe that Keeper has

approved, sponsored or otherwise associated itself with Keeper Tax.

**ANSWER**:    Admitted that Keeper Tax has used the mark KEEPER with respect to its own services.  Otherwise denied.

91.    Keeper Tax has intentionally used the KEEPER® trademark in connection with its offering for sale, sale and distribution of goods associated therewith knowing that such trademark is Keeper's exclusive property.

**ANSWER**:    Denied.

92.    Keeper Tax engaged in the activities involving the "keeper' name with the intent to confuse and deceive consumers into believing that Keeper Tax, and the goods it sells, are in some way sponsored by, or affiliated with or associated with Keeper or its products.

**ANSWER**:    Denied.

93.    Keeper Tax's unauthorized use of the KEEPER® mark as set forth herein has resulted in Keeper Tax unfairly benefiting from Keeper's advertising and promotion and profiting from Keeper's reputation and its registered trademarks to the substantial and irreparable injury of the public, Keeper, the KEEPER® trademark and the substantial goodwill represented thereby.

**ANSWER**:    Denied.

94.    Keeper Tax's aforesaid acts constitute trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

**ANSWER**:    Denied.

95.    Keeper Tax's acts have caused, and will continue to cause, great and irreparable injury to Keeper, and unless such acts are restrained by this Court, Keeper Tax will continue such acts, thereby causing Keeper to continue to suffer great and irreparable injury.

**ANSWER**:    Denied.

96.    Keeper has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Keeper Tax in an amount to be determined at trial.

**ANSWER**:    Denied.

## COUNT II: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (Lanham Act Section 43(a))

97.     Keeper incorporates all prior allegations as if set forth fully herein.

**ANSWER**:     Keeper Tax incorporates by reference its responses to all prior paragraphs.

98.     This Court has jurisdiction over the subject matter of this claim, this being a claim of unfair competition and false designation of origin arising under section 43(a) of the Lanham Act, codified in 15 U.S.C. § 1125(a).

**ANSWER**:     Admitted.

99.     Keeper Tax is fully aware of the popularity of the entire KEEPER application and product line and the clear association of the KEEPER® trademark with the line of cybersecurity applications and products of Keeper. Keeper Tax intentionally copied and offered in interstate commerce products that infringe the KEEPER® trademark with Keeper's products and application. Keeper Tax's use of the "keeper" name in association with its products and applications is confusingly similar in total image, appearance, and overall aesthetic look of the KEEPER® trademark. As a result, there has been instances of actual confusion and, therefore, the public is, and is likely to be, confused by Keeper Tax's use of the "keeper" designation

**ANSWER**:     Denied.

100.     Keeper Tax has used in commerce, and continues to use in commerce, the "keeper" designation to unfairly benefit from Keeper's success by selling the same products bearing the same name in this jurisdiction. Keeper Tax could have selected alternative names.

**ANSWER**:     Admitted that Keeper Tax has used the mark KEEPER with respect to its

own services.  Otherwise denied.

101.     Keeper Tax has used Keeper's distinctive KEEPER® name designation on its infringing products with the express intent to pass off Keeper Tax's products as those of Keeper and to cause confusion and mistake, and to deceive and mislead the purchasing public into believing that Keeper Tax is authorized, sponsored, affiliated with or associated with Keeper, and to trade upon Keeper's reputation for high-quality and to improperly appropriate to itself Keeper's valuable trademark rights.

**ANSWER**:     Denied.

102.     Sales of infringing products having the "keeper" name made by Keeper Tax are likely to cause consumer confusion because of the similarity in appearance and look between Keeper Tax's and Keeper's products and applications. Consumers will believe that Keeper Tax's products are either manufactured, licensed, affiliated with or sponsored by Keeper, or are being placed on the market with Keeper's consent and/or actual or implied authority. As a result,

Keeper has been and will continue to be irreparably injured by Keeper Tax's improper acts.

**ANSWER**:     Denied.

103.     Keeper Tax has willfully, deliberately and with predatory intent, created such confusion by copying and reproducing the distinctive KEEPER® trademark associated with Keeper's products and applications; and has advertised and sold, and threaten to advertise and sell, its products and applications so as to cause public confusion and deception. Further, Keeper Tax's sales and offers for sale of products and applications bearing the "keeper" name have caused and threaten to cause Keeper the loss of its valuable goodwill and reputations for making and selling distinctive, unique and high-quality cybersecurity products under the "keeper" name.

**ANSWER**:     Denied.

104.     Keeper Tax's aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Keeper Tax's products as those of Keeper in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

**ANSWER**:     Denied.

105.     Keeper Tax's wrongful acts will continue unless enjoined by this Court.

**ANSWER**:     Denied.

106.     Keeper has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Keeper Tax in an amount to be determined at trial.

**ANSWER**:     Denied.

## COUNT III:  TRADEMARK DILUTION
### (Federal Trademark Dilution)

107.     Keeper incorporates all prior allegations as if set forth fully herein.

**ANSWER**:     Keeper Tax incorporates by reference its responses to all prior paragraphs.

108.     This Court has jurisdiction over the subject matter of this claim, this being a claim of trademark dilution arising under section 43(c) of the Lanham Act, codified in 15 U.S.C. § 1125(c).

**ANSWER**:     Admitted.

109.     The KEEPER® trademark is distinctive, famous and widely recognized by the consuming public in the United States within the meaning of the Lanham Act.

**ANSWER**:     Denied.

110.     At this time, only Keeper Tax knows the full extent and duration of its infringement. Keeper Tax's actions have been and are willful and deliberate.

**ANSWER**:     Denied.

111.     Keeper's KEEPER® trademark was famous prior to the time when Keeper Tax's unlawful actions are believed to have begun.

**ANSWER**:     Denied.

112.     Keeper Tax's unlawful actions began long after Keeper's marks became famous, and Keeper Tax acted knowingly, deliberately and willfully with the intent to trade on Keeper's reputation and to dilute Keeper's KEEPER® trademark.

**ANSWER**:     Denied.

113.     When Keeper Tax's unlawful action began, Keeper's mark was widely recognized by the general consuming public of the United States as a designation of source of Keeper.

**ANSWER**:     Denied.

114.     For years, Keeper has advertised its products nationwide. Keeper's advertisements include print media, television ads and internet ads, which reach the general consuming public across the United States.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 114.

115.     Keeper also reaches the general public through internet channels such as YouTube. On YouTube, Keeper's username is "Keeper." There, Keeper publishes copies of its television ads and product features.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 115.

116.     Keeper's publicity also extends across the nation by way of third-party awards and Publications.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 116.

117.     Keeper's products are available nation-wide, at least through the Google Play Store, the Microsoft store and Apple's App Store.

**ANSWER**:     Admitted.

118.     Since the first use of the KEEPER® trademark, Keeper has spent substantial resources on advertising and developing brand recognition, including without limitation the abovementioned examples. Keeper has received feedback showing that customers recognize its mark. By way of non-limiting example, Keeper's mark is recognized in third party publications, ratings for its software and comments posted to Keeper's YouTube page.

**ANSWER**:     Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 118.

119.     Keeper Tax's intentional and unauthorized actions are likely to cause confusion mistake, or to deceive, mislead and/or defraud consumers to believe that the substandard products sold on Keeper Tax's website are genuine Keeper products. The actions complained of herein have diluted and will continue to dilute the KEEPER® trademark and is likely to impair the distinctiveness, strength and value of Keeper's marks, and injure the business reputation of Keeper and its trademark.

**ANSWER**:     Denied.

120.     Keeper Tax's conduct has caused actual confusion and diluted the value of the Keeper marks. For example, Keeper's trademarks and business are negatively impacted when users of Keeper Tax's product bearing the "keeper" name have negative experiences with the Keeper Tax product.

**ANSWER**:     Denied.

121.     Keeper Tax's conduct has caused trademark dilution of the KEEPER® trademark through the association arising from the similarity between the KEEPER® trademark and Keeper Tax's use of the term "keeper," which impairs the distinctiveness of the KEEPER® trademark.

**ANSWER**:     Denied.

122.     Keeper Tax's conduct has caused trademark dilution of the KEEPER® trademark through the association arising from the similarity between the KEEPER® trademark and Keeper Tax's use of the term "keeper" which harms the reputation of the KEEPER® trademark.

**ANSWER**:     Denied.

123.     Keeper Tax's wrongful acts will continue unless enjoined by this Court.

**ANSWER**:     Denied.

124.    Keeper has suffered, and will continue to suffer, substantial and irreparable harm and damage as a result of Keeper Tax's dilution, in an amount to be determined at trial.

**ANSWER**:    Denied.

### COUNT IV: STATE COMMON LAW TRADEMARK INFRINGEMENT
### (State Common Law Trademark Infringement and Unfair Competition)

125.    Keeper incorporates all prior allegations as if set forth fully herein.

**ANSWER**:    Keeper Tax incorporates by reference its responses to all prior paragraphs.

126.    This claim arises under the common law of this State relating to trademark infringement and unfair competition. This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

**ANSWER**:    Admitted.

127.    Keeper is the owner of all right, title and interest in and to the common law "keeper" trade name, designs, symbols and logos used by Keeper by virtue of its extensive manufacture and sale of products bearing such trade names, trademarks, designations, designs, symbols and logos (collectively, Keeper's "Common Law Trademarks") as set forth in the preceding paragraphs of this Complaint. In particular, because of its enormous sales and publicity, Keeper's has acquired common law trademark rights in its "keeper" products and applications.

**ANSWER**:    Keeper Tax lacks knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 127.

128.    The counterfeit and/or infringing products imported, advertised, distributed, offered for sale and sold by Keeper Tax incorporate matter constituting replicas and imitations of Keeper's Common Law Trademarks. Such unauthorized use by Keeper Tax of Keeper's Common Law Trademarks constitutes trademark infringement and unfair competition and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the products and to cause purchasers to believe such products are authentic products of Keeper when, in fact, they are not.

**ANSWER**:    Denied.

129.    Keeper Tax has willfully and intentionally misappropriated one or more of Keeper's Common Law Trademarks with the intent of causing confusion, mistake, and deception as to the source of its goods and with the intent to palm off its goods as those of Keeper and to place others in the position to palm off its goods as those of Keeper, and as such, Keeper Tax has

committed trademark infringement and unfair competition under the common law.

**ANSWER**:    Denied.

130.    By such actions of infringing Keeper's Common Law Trademarks, Keeper Tax is improperly trading upon the enviable reputation and goodwill of Keeper and is impairing Keeper's valuable rights in and to such trademarks.

**ANSWER**:    Denied.

131.    Keeper is informed and believes and thereupon alleges that Keeper Tax committed the above alleged acts in conscious disregard of Keeper's rights, and Keeper is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of Illinois.

**ANSWER**:    Denied.

132.    Keeper has no adequate remedy at law. The conduct of Keeper Tax has caused and, if not enjoined, will continue to cause, irreparable damage to Keeper's rights in and to its trademarks, and to Keeper's businesses, reputations and goodwill.

**ANSWER**:    Denied.

## COUNT V – ILLINOIS DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS 510 ET SEQ)

133.    Keeper incorporates all prior allegations as if set forth fully herein.

**ANSWER**:    Keeper Tax incorporates by reference its responses to all prior paragraphs.

134.    Keeper Tax has made a concerted effort to pass of its goods as those of Keeper through the use of the KEEPER® trademark.

**ANSWER**:    Denied.

135.    Keeper Tax's use of the "keeper" name has caused likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of the Keeper Tax products and applications.

**ANSWER**:    Denied.

136.    Keeper Tax's use of the "keeper" name has caused likelihood of confusion or misunderstanding as to affiliation, connection or association with or certification by another.

**ANSWER**:    Denied.

137.     By reason of the foregoing acts, Keeper Tax has engaged in, and is continuing to engage in acts which pass off its own goods or services as those of Keeper and caused [sic.] a likelihood of confusion (and actual confusion) or misunderstanding as to the source, sponsorship, approval, affiliation or connection with Keeper.

**ANSWER**:     Denied.

138.     Keeper has no adequate remedy at law. The conduct of Keeper Tax has caused and, if not enjoined, will continue to cause, irreparable damage to Keeper's rights in and to its trademarks, and to Keeper's businesses, reputations, and goodwill.

**ANSWER**:     Denied.

## COUNT VI – UNJUST ENRICHMENT

139.     Keeper incorporates all prior allegations as if set forth fully herein.

**ANSWER**:     Keeper Tax incorporates by reference its responses to all prior paragraphs.

140.     By reason of the foregoing act, Keeper Tax has been unjustly enriched to the detriment of Keeper. Keeper Tax's retention of monies gained through its deceptive business practices, acts of deceit, and otherwise, would serve to unjustly enrich Keeper Tax and would be contrary to the interests of justice.

**ANSWER**:     Denied.

## AFFIRMATIVE DEFENSES

In further response to the Complaint, and as additional defenses thereto, Keeper Tax asserts the following affirmative defenses, without admitting any allegations of the Complaint not otherwise admitted, and without assuming any burden when such burden would otherwise be on Plaintiff.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of laches, because Plaintiff knew or should have known about Keeper Tax's use of the KEEPER mark as early as 2018. Keeper Tax has been prejudiced by Plaintiff's unreasonable delay in bringing the present action, as Keeper Tax has significantly built up its business around the KEEPER mark in the intervening years.

### SECOND AFFIRMATIVE DEFENSE

The U.S. Patent and Trademark Office has already determined that there is no likelihood of confusion between the mark KEEPER as used on Plaintiff's services (Registration No. 3,965,190) and the mark KEEPER as used on Keeper Tax's services (Application Serial No. 97/117,952). Specifically, a trademark examining attorney passed Keeper Tax's Application to publication after a substantive review without citing Plaintiff's Registration as a bar to registration.

### THIRD AFFIRMATIVE DEFENSE

In light of the significant number of third-party marks which consist of or include the term "Keeper" with respect to digital apps and online services, Plaintiff's rights in its alleged KEEPER mark are so narrow that Keeper Tax's use of its own KEEPER mark does not infringe Plaintiff's rights or create a likelihood of confusion.

**FOURTH AFFIRMATIVE DEFENSE**

In light of the ubiquity of software and/or digital applications as a means for delivering services in the modern economy, the mere fact that providers of very different types of services associated with similar service marks do so through software or digital applications does not create or increase the likelihood that consumers will confuse the providers of such services.

**DEMAND FOR JURY TRIAL**

Keeper Tax hereby demands a jury trial on all issues so triable in this case.

Respectfully submitted,

KEEPER TAX INC.

Date: April 14, 2023                    By:      /s/  Mark R. Bagley
                                             Mark R. Bagley
                                             TOLPIN & PARTNERS, PC
                                             30 North LaSalle Street, Suite 1510
                                             Chicago, Illinois 60602
                                             (312) 698-8971

                                             *Attorney for Defendant Keeper Tax
                                             Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **ANSWER** was served via the Northern District of Illinois electronic filing system to:

> Dean D. Niro
> VITALE, VICKREY, NIRO, SOLON & GASEY LLP
> 311 S. Wacker Dr., Suite 2470
> Chicago, Illinois 60606

on this 14th day of April, 2023.

/s/ Mark R. Bagley<br>Mark R. Bagley