*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1287449** |
|---|---|
| Filing date: | **05/25/2023** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

## Petition for Cancellation

Notice is hereby given that the following party has filed a petition to cancel the registration indicated below.

## Petitioner information

| Name | Keeper Security, Inc. | | |
|---|---|---|---|
| Entity | Corporation | Citizenship | Illinois |
| Address | 820 W. JACKSON BLVD., SUITE 400<br>CHICAGO, IL 60607<br>UNITED STATES | | |

| Attorney information | DEAN D. NIRO<br>VITALE, VICKREY, NIRO, SOLON & GASEY LLP<br>311 S. WACKER DR., SUITE 2470<br>CHICAGO, IL 60606<br>UNITED STATES<br>Primary email: dniro@vvnlaw.com<br>Secondary email(s): swierk@vvnlaw.com, nniro@vvnlaw.com<br>312-236-0733 |
|---|---|
| Docket no. | KeeperTax |

## Registration subject to cancellation

| Registration no. | 7056960 | Registration date | 05/16/2023 |
|---|---|---|---|
| Register | Principal | | |
| Registrant | Keeper Tax, INc.<br>22 VICKSBURG ST<br>SAN FRANCISCO, CA 94114<br>UNITED STATES | | |

## Goods/services subject to cancellation

Class 035. First Use: Jan 28, 2019 First Use In Commerce: Jan 28, 2019
All goods and services in the class are subject to cancellation, namely: Tax filing services for self-employed individuals

## Grounds for cancellation

| Priority and likelihood of confusion | Trademark Act Sections 14(1) and 2(d) |
|---|---|
| Dilution by blurring | Trademark Act Sections 14(1) and 43(c) |
| Dilution by tarnishment | Trademark Act Sections 14(1) and 43(c) |

## Mark cited by petitioner as basis for cancellation

| U.S. registration no. | 3965190 | Application date | 08/30/2010 |
|---|---|---|---|

**PLAINTIFF'S EXHIBIT**

**201**

| Register | Principal | | |
|---|---|---|---|
| Registration date | 05/24/2011 | Foreign priority date | NONE |
| Word mark | KEEPER | | |
| Design mark | | | |
| Description of mark | NONE | | |
| Goods/services | Class 009. First use: First Use: Jan 1, 2009 First Use In Commerce: Jan 1, 2009<br><br>Computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data | | |

| Attachments | Cancellation-w-exhibits.pdf(1070890 bytes ) |
|---|---|

| Signature | /Dean D. Niro/ |
|---|---|
| Name | Dean D. Niro |
| Date | 05/25/2023 |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| In re Registration No. 7,056,960 | ) | |
| | ) | |
| KEEPER SECURITY, INC., | ) | |
| | ) | Cancellation No.: _____ |
| Petitioner, | ) | |
| v. | ) | |
| | ) | |
| KEEPER TAX, INC., | ) | |
| | ) | |
| Registrant. | | |

## <u>PETITION TO CANCEL</u>

Petitioner, Keeper Security, Inc. hereby petitions to cancel Registration No. 7056960 for the mark KEEPER pursuant to 15 U.S.C. § 1064 and all other applicable authority. In the matter of United States Trademark Registration No. 7056960 (the "Keeper Tax Registration"), issued on May 16, 2023, assigned to Keeper Tax, Inc ("Registrant"), for registration of the mark KEEPER on the goods and services described as "Tax filing services for self-employed individuals" in International Class 035. Petitioner, Keeper Security, Inc. ("Petitioner"), owns United States Trademark Application Serial No. 3965190 and believes it will be damaged by the Keeper Tax Registration. Petitioner hereby seeks cancellation of the registration of the Keeper Tax Registration.

The grounds for cancellation are as follows:

## Petitioner -- Keeper Security Inc.

1.      Keeper Security, Inc. ("Petitioner" or "Keeper") is the assignee and owner of the entire right, title and interest in the trademark "KEEPER", United Trademark Registration No. 3965190 (the "KEEPER®" Trademark) in International Class 035 for "computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data." (see Exhibit A).

2.      Keeper Tax, Inc. ("Registrant" or "Keeper Tax"), owns Trademark registration 7056960, also in International Class 035 for "tax filing services for self-employed individuals" which is identical to the KEEPER® Trademark. (see Exhibit B).

3.      Petitioner first began using the KEEPER® Trademark on least January 1, 2009, in relation to computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data.  Petitioner's use in commerce of the KEEPER® Trademark has been continuous since at least January 1, 2009.

4.      Petitioner also owns broad common law rights to the KEEPER® Trademark as a result of its investment over the years in marketing, advertising and promotion. The KEEPER® Trademark is used in connection with computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data. The KEEPER® Trademark is symbolic of extensive goodwill and customer recognition built-up through its significant expenditures of time and effort by Petitioner.

5.      Petitioner maintains a website at www.keepersecurity.com. The KEEPER® Trademark has been prominently displayed in association with Petitioner's cybersecurity products:





6.      An example of the use of the KEEPER® Trademark is set forth on its website

www.keepersecurity.com:



7.     The KEEPER® Trademark is also used in connection with mobile devices:



8.     Petitioner has won awards for innovation such as being named winner of the "Most Innovative in Endpoint Security Award," the "Hot Company in Identity and Access Management" and "Cutting Edge Security Company of the Year" awards during RSA Conference 2021.

9.     Petitioner was granted awards for the CEO of the year, CTO of the year and "Hot Company of the Year" at the Global InfoSec Awards during the RSA Conference 2022.

10.    Petitioner's products are the highest rated in the industry across G2, Trustpilot, PCMag and U.S. News & World Report. For the last several years, Petitioner has received several InfoSec Awards from Cyber Defense Magazine for its cybersecurity enterprise software.

11.    Petitioner has been named PC Magazine's Best Password Manager of the Year & Editors' Choice, PCWorld's Editors' Choice and is the winner of four G2 Best Software Awards and the InfoSec Award for Best Product in Password Management for SMB Cybersecurity.

12.    The Keeper product is available over the Internet and various "app" stores, including Apple's App Store. The Keeper product has received thousands of five-star ratings on

- 4 -

various app stores. For example, the latest version has received a 4.9-star rating (out of 5 stars) among user reviews on Apple's App Store:





13. The KEEPER® Trademark appears in association with the Keeper product and with Keeper Security on application platforms such as the Google Play Store as demonstrated at: https://play.google.com/store/apps/details?id=com.callpod.android_apps.keeper.

14. The KEEPER® Trademark appears in association with the Keeper product and with Keeper Security on the Microsoft application platform:



15. During the past 14 years, Petitioner has built up valuable good will in the trademark "KEEPER." Annually, Petitioner spends millions of dollars on marketing and advertising of the KEEPER® Trademark and to promote its product and company via Google search, the Apple App Store, the Google Play Store, public relations, outdoor advertising and other digital media.

16. Through Petitioner's extensive marketing and advertising, Petitioner has obtained high rankings in the various app stores and Google search to be the first application and/or company listed when searching the word "keeper."

17. The promotion has worked, as Keeper is the first hit on a google search:



18.     The KEEPER® Trademark is prominently displayed on outdoor billboards in 11 states:



19.     Petitioner has also advertised on television. One of Petitioner's 2014 television commercials is available on YouTube at: https://youtu.be/z2EPjDqDShA.

20.     The KEEPER® Trademark has never been abandoned, the registration is in full force and has become incontestable pursuant to 15 U.S.C. § 1065.

21.     The KEEPER® Trademark has been associated with Petitioner's computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data products since 2009.

22.     The KEEPER® Trademark has achieved secondary meaning in the relevant market.

23.     Prior to Registrant's filing of the application which matured into the Keeper Tax Registration, Petitioner's mark was widely recognized by the general consuming public of the United States as a designation of source of Keeper.

24.     The KEEPER® Trademark has become incontestable due to Petitioner's continuous use of the trademarks for over five years since the mark was granted federal registration on May 24, 2011. Petitioner filed a Declaration of Incontestability with the USPTO of the KEEPER® Trademark under Section 15.

25.     Petitioner, Keeper Security, Inc. has standing to file this Petition to Cancel pursuant to Sections 13 and 14 of the Lanham Act.

26.     Petitioner has a personal interest in the cancellation and has a reasonable basis to believe it will be damaged by the Keeper Tax Registration.

### Registrant -- Keeper Tax, Inc.

27.     Registrant, Keeper Tax, Inc. is a Delaware company with its principal place of business located at 22 Vicksburg St., San Francisco CA 94114.

28.     Keeper Tax, Inc. is identified as the primary correspondent regarding the Keeper Tax Registration. Registrant lists paul@keepertax.com as the primary email address to receive all correspondence. Registrant lists Paul Koullick as the signatory authority for the Application.

29.     Registrant is listed as the owner of United States Trademark Registration No. 7056960 for the mark KEEPER, which was issued in International Class 035.

30.     The United States Patent and Trademark Office issued the Keeper Tax Registration on May 16, 2023, less than five (5) years from the date this Petition to Cancel was filed.

31.     The Keeper Tax Registration identifies the goods and services as follows: "Tax filing services for self-employed individuals."

32.     Registrant is a direct competitor of and has no relationship with Petitioner.

33.     On November 11, 2021, Registrant filed Application Serial No. 97117952 for use of the mark "KEEPER TAX."

34.     On August 26, 2022, the Examiner contacted Paul Koullick via email, and suggested Registrant amend the submitted drawing from "KEEPER TAX" to "KEEPER."  On the same date, the Examiner agreed to adopt the examiner's proposed changes.

35.     On August 26, 2022, the examiner for Application No. 97117952 filed the following amendment to the application: "The drawing showing the mark in standard characters is amended to read as follows: 'KEEPER.'"

36.     Since at least October 1, 2022, Registrant has used the "KEEPER" mark in association with its tax-filing products and/or services.

37.     Registrant's "keeper" product is displayed next to the KEEPER® Trademark in the Apple App Store when a search of the word "keeper" is entered:



38.     Similarly, the two products appear next to each other in the Google Play Store when the term "keeper" is entered into the search parameter:



39.     Registrant, through the use of the "KEEPER" mark, is attempting to confuse the public and skew the search results toward Registrant's product and away from Petitioner in the various app stores.

40.     Use of the term "keeper" by Keeper Tax is likely to cause consumer confusion with the KEEPER® Trademark.

41.     Registrant, through the use of the "KEEPER" mark, has adversely and materially impacted Petitioner's sales of Petitioner's own product in the app stores. Additionally, Registrant's actions have impacted the volume of website traffic and associated revenues of Petitioner.

42.     Use of the term "KEEPER" by Registrant has caused actual confusion with the KEEPER® Trademark. There have been several instances of actual confusion between Registrant's use of the "keeper" name and the KEEPER ® Trademark.

43.     Petitioner has received numerous calls and emails to its customer support team thereby confusing Petitioner with the Keeper Tax product and company. The instances of confusion are clearly related to Registrant's use of the "keeper" mark.

44.     Petitioner has recorded numerous instances where individuals have contacted Petitioner requesting support for the Keeper Tax product. This shows actual confusion due to Keeper Tax's use of the "keeper" mark.

45.     Petitioner has also recorded instances where Registrant's customers have contacted Petitioner complaining about Registrant's product. For example, Petitioner received an email complaint stating: "I want a new keeper the one I have now doesn't respond waste of money."

46.     In addition, Petitioner received an email stating: "Please delete my account and any and all personal information I have collected with Keeper Tax" and "I'd like to delete my keeper tax account altogether." There have been several other instances where customers of Registrant

have contacted Petitioner requesting that they delete their account due to the fact that they were upset with Registrant's product.

47.    Any defects or faults in the quality of Registrant's products under the "KEEPER" mark will continue to reflect upon and seriously injure the reputation which Petitioner has established for its services during the last 14 years.

48.    Instances of actual confusion between the Keeper Tax product and the KEEPER® Trademark have increased recently.

49.    If Registrant is permitted to retain its registration for the mark "KEEPER" for its services as set forth in its certificate of registration, confusion in the trade would continue to result by reason of the respective marks being identical.

50.    The above-referenced confusion will continue to result in loss of revenues to Petitioner and damage to its reputation.

**Grounds for Cancellation**

**COUNT I**
**LIKELIHOOD OF CONFUSION**

51.    Petitioner incorporates paragraphs 1-50 by reference and realleges the same as if originally set forth herein.

52.    There is a likelihood of confusion between the KEEPER® Trademark Goods and Services and Petitioner's Goods and Services, and the Keeper Tax Registration and in association with the goods Registrant offers under the Keeper Tax Registration.

53.    In particular, the Keeper Tax Registration is confusingly similar to the KEEPER® Trademark because the first element of the Keeper Tax Registration is identical to the first element of the KEEPER® Trademark, and the second element of the Keeper Tax Registration is a

description of the product. Further, the Keeper Tax Registration is identical to the KEEPER® Trademark, and the marks are used on and in connection with similar goods/services.

54.     Given the filing date of the Application, the Registrant was clearly exposed to and aware of the Petitioner and the KEEPER® Trademark before filing the Application.

55.     Upon information and belief, due to the fame and renown of the KEEPER® Trademark, Registrant's selection of a mark that is confusingly similar to the KEEPER® Trademark was no coincidence, and was intended to trade off of the substantial reputation and goodwill of Petitioner and the KEEPER® Trademark.

56.     The Registrant is clearly attempting to cause confusion, to cause mistake, and/or to deceive between the two marks by using the identical term "Keeper" in the Keeper Tax Registration, an identical term of the KEEPER® Trademark.

57.     As a result, the Keeper Tax Registration so resembles the KEEPER® Trademark that registration of the Keeper Tax Registration would likely cause confusion, cause mistake, and/or deceive purchasers when the Keeper Tax Registration is used on or in connection with Registrant's goods, and, therefore, registration of the Keeper Tax Registration should be cancelled.

58.     By reason of the foregoing, Petitioner is likely to be harmed by the registration of the Keeper Tax Registration, United States Trademark Registration No. 7056960.

## COUNT II
## DILUTION

59.     Petitioner incorporates paragraphs 1-50 by reference and realleges the same as if originally set forth herein.

60.     The KEEPER® Trademark are famous because they are widely recognized by the general consuming public as a designation of the source of the Petitioner's Goods and Services.

61.     Registrant applied for the Keeper Tax Registration after the KEEPER® Trademark became famous.

62.     Registrant's registration and/or use of the Keeper Tax Registration is likely to cause dilution of the KEEPER® Trademark by blurring and/or dilution by tarnishment.

63.     As a result of the association arising from the similarity between Keeper Tax Registration and the famous KEEPER® Trademark, the distinctiveness of the famous KEEPER® Trademark is impaired, and, therefore, registration of the Keeper Tax Registration should be cancelled.

64.     As a result of the association arising from the similarity between Registrant's Keeper Tax Registered Trademark and the famous KEEPER® Trademark, the reputation of the famous KEEPER® Trademark is harmed, and, therefore, registration of the Keeper Tax Registration should be cancelled.

65.     By reason of the foregoing, Petitioner is likely to be harmed by the Keeper Tax Registration, United States Trademark Registration No. 7056960.

WHEREFORE, KEEPER SECURITY, INC. respectfully requests that the Trademark Trial and Appeal Board cancel registration for United States Trademark Application Registration No. 7056960.

May 25, 2023                              Respectfully submitted,

                                         _____/Dean D. Niro/_____
                                         Dean D. Niro
                                         VITALE, VICKREY, NIRO, SOLON & GASEY LLP
                                         311 S. Wacker Dr., Suite 2470
                                         Chicago, IL 60606
                                         Tel.:    (312) 236-0733
                                         dniro@vvnlaw.com

                                         *Attorney for Petitioner, Keeper Security, Inc.*

**EXHIBIT A**

**EXHIBIT A**

**Generated on:** This page was generated by TSDR on 2023-05-25 12:45:13 EDT

**Mark:** KEEPER

keeper

| | | | |
|---|---|---|---|
| **US Serial Number:** | 85118630 | **Application Filing Date:** | Aug. 30, 2010 |
| **US Registration Number:** | 3965190 | **Registration Date:** | May 24, 2011 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |
| **TM5 Common Status Descriptor:** |  | | LIVE/REGISTRATION/Issued and Active |
| | | | The trademark application has been registered with the Office. |
| **Status:** | The registration has been renewed. | | |
| **Status Date:** | Jul. 30, 2020 | | |
| **Publication Date:** | Mar. 08, 2011 | | |

## Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | KEEPER |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |
| **Acquired Distinctiveness Claim:** | In whole |

## Related Properties Information

| | |
|---|---|
| **Claimed Ownership of US Registrations:** | 3719919 |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data | | |
| **International Class(es):** | 009 - Primary Class | **U.S Class(es):** | 021, 023, 026, 036, 038 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Jan. 01, 2009 | **Use in Commerce:** | Jan. 01, 2009 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |

| | | | |
|---|---|---|---|
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

# Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | KEEPER SECURITY, INC. |
| **Owner Address:** | SUITE 400<br>820 W JACKSON BLVD<br>CHICAGO, ILLINOIS UNITED STATES 60607 |
| **Legal Entity Type:** | CORPORATION |
| **State or Country Where Organized:** | ILLINOIS |

# Attorney/Correspondence Information

**Attorney of Record - None**

**Correspondent**

| | |
|---|---|
| **Correspondent Name/Address:** | KEEPER SECURITY, INC.<br>SUITE 400<br>820 W JACKSON BLVD<br>Chicago, ILLINOIS UNITED STATES 60607 |
| **Phone:** | 3128971181 |
| **Correspondent e-mail:** | accounting@keepersecurity.com |
| **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

# Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jul. 30, 2020 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Jul. 30, 2020 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | 76874 |
| Jul. 30, 2020 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 76874 |
| Jul. 30, 2020 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 76874 |
| May 28, 2020 | TEAS SECTION 8 & 9 RECEIVED | |
| May 24, 2020 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| Oct. 26, 2019 | SEC. 15 ACKNOWLEDGEMENT - E-MAILED | |
| Oct. 26, 2019 | REGISTERED - SEC. 15 ACKNOWLEDGED | 75184 |
| Oct. 21, 2019 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 75184 |
| Aug. 15, 2019 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Aug. 15, 2019 | TEAS SECTION 15 RECEIVED | |
| Aug. 13, 2016 | NOTICE OF ACCEPTANCE OF SEC. 8 - E-MAILED | |
| Aug. 13, 2016 | REGISTERED - SEC. 8 (6-YR) ACCEPTED | 66607 |
| Aug. 13, 2016 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 66607 |
| Aug. 02, 2016 | TEAS SECTION 8 RECEIVED | |
| Aug. 02, 2016 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| May 24, 2016 | COURTESY REMINDER - SEC. 8 (6-YR) E-MAILED | |
| Apr. 12, 2016 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Oct. 27, 2015 | NOTICE OF SUIT | |
| Nov. 23, 2011 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |
| May 24, 2011 | REGISTERED-PRINCIPAL REGISTER | |
| Mar. 08, 2011 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Mar. 08, 2011 | PUBLISHED FOR OPPOSITION | |
| Jan. 28, 2011 | LAW OFFICE PUBLICATION REVIEW COMPLETED | 66121 |
| Jan. 24, 2011 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Jan. 24, 2011 | EXAMINER'S AMENDMENT ENTERED | 88888 |

| | | |
|---|---|---|
| Jan. 24, 2011 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED | 6328 |
| Jan. 24, 2011 | EXAMINERS AMENDMENT E-MAILED | 6328 |
| Jan. 24, 2011 | EXAMINERS AMENDMENT -WRITTEN | 66384 |
| Jan. 12, 2011 | TEAS/EMAIL CORRESPONDENCE ENTERED | 66121 |
| Jan. 12, 2011 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 66121 |
| Jan. 11, 2011 | ASSIGNED TO LIE | 66121 |
| Jan. 11, 2011 | ASSIGNED TO LIE | 68123 |
| Dec. 16, 2010 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Dec. 14, 2010 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 14, 2010 | NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 14, 2010 | NON-FINAL ACTION WRITTEN | 66384 |
| Dec. 14, 2010 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 14, 2010 | NON-FINAL ACTION E-MAILED | 6325 |
| Dec. 14, 2010 | NON-FINAL ACTION WRITTEN | 66384 |
| Dec. 12, 2010 | ASSIGNED TO EXAMINER | 66384 |
| Sep. 02, 2010 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Sep. 02, 2010 | NEW APPLICATION ENTERED | |

# TM Staff and Location Information

| | |
|---|---|
| **TM Staff Information - None** | |
| **File Location** | |
| **Current Location:** GENERIC WEB UPDATE | **Date in Location:** Jul. 30, 2020 |

# Assignment Abstract Of Title Information

| | |
|---|---|
| **Summary** | |
| **Total Assignments:** 1 | **Registrant:** Callpod, Inc. |

**Assignment 1 of 1**

| | | |
|---|---|---|
| **Conveyance:** | ASSIGNS THE ENTIRE INTEREST | |
| **Reel/Frame:** | 4664/0252 | **Pages:** 12 |
| **Date Recorded:** | Nov. 21, 2011 | |
| **Supporting Documents:** | assignment-tm-4664-0252.pdf | |

| | | |
|---|---|---|
| **Assignor** | | |
| **Name:** | CALLPOD INC. | **Execution Date:** Nov. 01, 2011 |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** ILLINOIS |

| | | |
|---|---|---|
| **Assignee** | | |
| **Name:** | KEEPER SECURITY, INC. | **State or Country Where Organized:** ILLINOIS |
| **Legal Entity Type:** | CORPORATION | |
| **Address:** | 850 W JACKSON BLVD SUITE 400 CHICAGO, ILLINOIS 60607 | |

| | |
|---|---|
| **Correspondent** | |
| **Correspondent Name:** | KEEPER SECURITY INC. |
| **Correspondent Address:** | 850 W JACKSON BLVD SUITE 400 CHICAGO, IL 60607 |

| |
|---|
| **Domestic Representative - Not Found** |

**EXHIBIT B**

**EXHIBIT B**

**Generated on:** This page was generated by TSDR on 2023-05-25 12:47:29 EDT

**Mark:** KEEPER



| | |
|---|---|
| **US Serial Number:** 97117952 | **Application Filing Date:** Nov. 10, 2021 |
| **US Registration Number:** 7056960 | **Registration Date:** May 16, 2023 |
| **Register:** Principal | |
| **Mark Type:** Service Mark | |

**TM5 Common Status Descriptor:**  LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

**Status:** Registered. The registration date is used to determine when post-registration maintenance documents are due.

**Status Date:** May 16, 2023

**Publication Date:** Oct. 04, 2022  **Notice of Allowance Date:** Nov. 29, 2022

---

## Mark Information

**Mark Literal Elements:** KEEPER

**Standard Character Claim:** Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

**Mark Drawing Type:** 4 - STANDARD CHARACTER MARK

---

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Tax filing services for self-employed individuals

**International Class(es):** 035 - Primary Class  **U.S Class(es):** 100, 101, 102

**Class Status:** ACTIVE

**Basis:** 1(a)

**First Use:** Jan. 28, 2019  **Use in Commerce:** Jan. 28, 2019

---

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | No | **Currently Use:** | Yes |
| **Filed ITU:** | Yes | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

---

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | Keeper Tax, INC. |
| **Owner Address:** | 22 Vicksburg St<br>San Francisco, CALIFORNIA UNITED STATES 94114 |
| **Legal Entity Type:** | CORPORATION |

| | |
|---|---|
| **State or Country Where Organized:** | DELAWARE |

## Attorney/Correspondence Information

**Attorney of Record - None**

**Correspondent**

| | |
|---|---|
| **Correspondent Name/Address:** | Keeper Tax, INC.<br>22 VICKSBURG ST<br>SAN FRANCISCO, CALIFORNIA UNITED STATES 94114 |
| **Phone:** | 314-400-8008 |
| **Correspondent e-mail:** | paul@keepertax.com notifications@trademarkeng ine.com |

| | |
|---|---|
| **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| May 16, 2023 | NOTICE OF REGISTRATION CONFIRMATION EMAILED | |
| May 16, 2023 | REGISTERED-PRINCIPAL REGISTER | |
| Apr. 11, 2023 | NOTICE OF ACCEPTANCE OF STATEMENT OF USE E-MAILED | |
| Apr. 10, 2023 | ALLOWED PRINCIPAL REGISTER - SOU ACCEPTED | |
| Mar. 01, 2023 | STATEMENT OF USE PROCESSING COMPLETE | 66230 |
| Feb. 08, 2023 | USE AMENDMENT FILED | 66230 |
| Mar. 01, 2023 | CASE ASSIGNED TO INTENT TO USE PARALEGAL | 66230 |
| Feb. 08, 2023 | TEAS STATEMENT OF USE RECEIVED | |
| Nov. 29, 2022 | NOA E-MAILED - SOU REQUIRED FROM APPLICANT | |
| Oct. 04, 2022 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Oct. 04, 2022 | PUBLISHED FOR OPPOSITION | |
| Sep. 14, 2022 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Aug. 29, 2022 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Aug. 26, 2022 | EXAMINER'S AMENDMENT ENTERED | 88888 |
| Aug. 26, 2022 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED | |
| Aug. 26, 2022 | EXAMINERS AMENDMENT E-MAILED | |
| Aug. 26, 2022 | EXAMINERS AMENDMENT -WRITTEN | 96111 |
| Aug. 22, 2022 | ASSIGNED TO EXAMINER | 96111 |
| Nov. 17, 2021 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED | |
| Nov. 13, 2021 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

**TM Staff Information - None**

**File Location**

| | | | |
|---|---|---|---|
| **Current Location:** | PUBLICATION AND ISSUE SECTION | **Date in Location:** | Apr. 10, 2023 |

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

May 25, 2023

Cancellation No. 92082412
Registration No. 7056960

Keeper Tax, INc.

22 Vicksburg St

San Francisco, CA 94114

*Keeper Security, Inc.*
*v.*

*Keeper Tax, INc.*

DEAN D. NIRO
VITALE, VICKREY, NIRO, SOLON & GASEY LLP
311 S. WACKER DR., SUITE 2470

CHICAGO, IL 60606

**ESTTA1287449**

**NOTICE OF INSTITUTION**

The petitioner (plaintiff) identified above has filed a petition to cancel the above-identified registration owned by respondent (defendant). This notice of institution is forwarded pursuant to Trademark Rules 2.113(b) and (c), and constitutes service of the petition to cancel on respondent. An electronic version of the petition to cancel is viewable on TTABVUE at https://ttabvue.uspto.gov/ttabvue/. *See* Trademark Rule 2.113(a). The parties should diligently monitor this proceeding via TTABVUE.

**RESPONDENT MUST FILE ANSWER THROUGH ESTTA**

As required in the schedule below, **respondent must file an answer within forty (40) days from the date of this order**. Failure to file a timely answer may result in the entry of default judgment and cancellation of the registration. Regarding when a deadline falls on a Saturday, Sunday or federal holiday, *see* Trademark Rule 2.196. Respondent must file the

he answer through ESTTA Electronic System for Trademark Trials and Appeals, unless ESTTA is unavailable due to technical problems or extraordinary circumstances are present. An answer filed on paper under these limited circumstances must be accompanied by a Petition to the Director (and the required fee under Trademark Rule 2.6). *See* Trademark Rule 2.114(b)(1). In substance, respondent's answer must comply with Fed. R. Civ. P. 8(b); it must admit or deny the allegations in the petition to cancel, and may include available defenses and counterclaims. Regarding the form and content of an answer, *see* Trademark Rule 2.114(b)(2) and TBMP § 311.

**DUTY TO MAINTAIN ACCURATE CORRESPONDENCE INFORMATION**
Throughout this proceeding, the parties, and their attorneys or representatives, must notify the Board of any correction or update of physical address and email address, and should use the ESTTA change of address form. *See* Trademark Rule 2.18(b); TBMP § 117.

**SERVICE OF ANSWER AND OF ALL SUBMISSIONS**
The service of the answer, and all other submissions in this proceeding, and of all matters that are required to be served but not required to be filed in the proceeding record, **must** be by **email** unless the parties stipulate otherwise. Trademark Rule 2.119(b). In the absence of a stipulation, service may be by other means **only** under the **limited** circumstances and in a manner specified in Trademark Rule 2.119(b). Regarding the signing and service of all submissions, *see* TBMP §§ 113-113.04.

The answer, and all other submissions, **must** include proof of service. As noted in TBMP § 113.03, proof of service may be in the following certificate of service form:

> *I hereby certify that a true and complete copy of the foregoing (insert title of submission) has been served on (insert name of opposing counsel or party) by forwarding said copy on (insert date of mailing), via email (or insert other appropriate method of delivery) to: (set out name, and address or email address of opposing counsel or party).*
>
> *Signature*_____
> *Date*_____

**SUBMIT ALL FILINGS ONLINE VIA ESTTA**
Submissions **must** be filed via ESTTA, the Board's online filing system, unless ESTTA is unavailable due to technical problems or extraordinary circumstances are present. Trademark Rule 2.126(a). Submissions may be filed in paper form **only** under the **limited** circumstances specified in Trademark Rule 2.126(b), with a required written explanation. ESTTA is accessible at the Board's web page: https://estta.uspto.gov/. The page has instructions and tips. ESTTA offers various forms, some of which may require attachments and/or a fee. For technical questions, a party may call 571-272-8500 (Mon. - Fri. 8:30 - 5:00 ET) or email

ESTTA@uspto.gov. This proceeding involves several deadlines, and due to potential technical issues, parties should not wait until the deadline to submit filings. The Board may **decline to consider** an untimely submission. Moreover, Trademark Rule 2.126 sets forth the required form and format for all submissions (*e.g.*, page limitations), and the Board may **decline to consider** any submission that does not comply with this rule, including, but not limited to motions, briefs, exhibits, and deposition transcripts.

## CONFERENCE, DISCOVERY, DISCLOSURE AND TRIAL SCHEDULE

| | |
|---|---|
| Time to Answer | 7/4/2023 |
| Deadline for Discovery Conference | 8/3/2023 |
| Discovery Opens | 8/3/2023 |
| Initial Disclosures Due | 9/2/2023 |
| Expert Disclosures Due | 12/31/2023 |
| Discovery Closes | 1/30/2024 |
| Plaintiff's Pretrial Disclosures Due | 3/15/2024 |
| Plaintiff's 30-day Trial Period Ends | 4/29/2024 |
| Defendant's Pretrial Disclosures Due | 5/14/2024 |
| Defendant's 30-day Trial Period Ends | 6/28/2024 |
| Plaintiff's Rebuttal Disclosures Due | 7/13/2024 |
| Plaintiff's 15-day Rebuttal Period Ends | 8/12/2024 |
| Plaintiff's Opening Brief Due | 10/11/2024 |
| Defendant's Brief Due | 11/10/2024 |
| Plaintiff's Reply Brief Due | 11/25/2024 |
| Request for Oral Hearing (optional) Due | 12/5/2024 |

## PARTIES ARE REQUIRED TO HOLD DISCOVERY CONFERENCE

The parties are required to schedule and hold a discovery conference by the deadline in the schedule in this order, or as reset by the Board. In the conference, the parties are required to discuss, at a minimum, 1) the nature and basis of their claims and defenses, 2) the possibility of promptly settling, or at least narrowing the scope of claims or defenses, and 3) arrangements for disclosures, discovery, preserving discoverable information and introduction of evidence at trial. For guidance, *see* Fed. R. Civ. P. 26(f), Trademark Rule 2.120(a)(2)(i) and TBMP §§ 401.01 and 408.01(a).

The parties must hold the conference in person, by telephone or by a means on which they agree. A Board interlocutory attorney or administrative trademark judge will participate in the conference either upon request of any party made no later than ten (10) days prior to the conference deadline, or when the Board deems it useful to have Board involvement. *See* Trademark Rule 2.120(a)(2)(i). A request for Board participation must be made either through ESTTA, or by telephone call to

the assigned interlocutory attorney named on the TTABVUE record for this proceeding. A party requesting Board participation should first determine possible dates and times when all parties are available. A conference with a Board attorney's participation will be by telephone in accordance with the Board's instructions.

For efficiency, the parties may stipulate to various procedural and substantive disclosure, discovery and trial matters (*e.g.*, modification of deadlines and obligations) upon written stipulation and approval by the Board. Trademark Rule 2.120(a)(2)(iv) provides a non-exhaustive list of matters to which parties may stipulate. The best practice is to reduce all stipulations to writing. If email service is not practical, such as for voluminous document production in discovery, the parties should discuss in the conference how production will be made. The parties, and their attorneys or representatives, have **a duty to cooperate** in the discovery process. TBMP § 408.01.

**PROTECTIVE ORDER FOR CONFIDENTIAL INFORMATION**

The Board's Standard Protective Order is automatically imposed in all *inter partes* proceedings, and is available at: https://www.uspto.gov/trademarks-application-process/appealing-trademark-decisions/standard-documents-and-guidelines-0.
During their conference, the parties should discuss whether they will use an alternative or modified protective order, subject to approval by the Board. *See* Trademark Rule 2.116(g) and TBMP § 412. The standard order does not automatically protect confidential information; its provisions for designating confidential information must be utilized as needed by the parties. Trademark Rule 2.126(c) sets forth the procedure for filing confidential submissions.

**ACCELERATED CASE RESOLUTION (ACR)**

During their conference, the parties are to discuss whether they wish to seek mediation or arbitration, and whether they can stipulate to the Board's Accelerated Case Resolution (ACR) process for a more efficient and cost-effective means of obtaining the Board's determination of the proceeding. For details, and examples of ACR proceedings, *see* TBMP § 528, and the Board's webpage: https://www.uspto.gov/ttab.

**INITIAL DISCLOSURES AND DISCOVERY**

Regarding the deadline for and contents of initial disclosures, *see* Trademark Rules 2.120(a)(1) and (2)(i), and TBMP § 401.02. Regarding deadlines for serving and responding to discovery, *see* Trademark Rule 2.120(a)(3) and TBMP § 403.03. Certain provisions of Fed. R. Civ. P. 26 are applicable in modified form. Note that written discovery (interrogatories, requests for production, requests for admission) must be served **early** enough so that responses will be due **no later than** the close of discovery. Regarding the scope and limits of discovery, *see* TBMP 414; discoverable items may include documents, tangible things, and electronically stored information (ESI).

**MOTIONS**

Certain provisions of Fed. R. Civ. P. 11 apply to all submissions in Board proceedings. *See* TBMP § 527.02. Regarding available motions, *see* TBMP Chapter 500. Regarding applicable deadlines to respond to motions, depending on the motion filed, *see* Trademark Rules 2.127(a) and (e)(1). When a party timely files a potentially dispositive motion the proceeding is suspended with respect to all matters not germane to the motion. *See* Trademark Rule 2.127(d). In addressing motions or other filings, if it appears to the Board that a telephone conference would be beneficial, or upon request of one or both parties, the Board may schedule a conference. *See* Trademark Rule 2.120(j)(1) and TBMP § 502.06(a).

**PRETRIAL DISCLOSURES, TRIAL AND BRIEFING**

Regarding the procedures and deadlines for pretrial disclosures and trial, and specifically the noticing, taking, serving and submitting of evidence and testimony, *see* Trademark Rules 2.120(k), 2.121, 2.122, 2.123 and 2.125, as well as TBMP Chapter 700. The parties should review these authorities. For example: witness testimony may be submitted in the form of affidavit or declaration subject to the right to oral cross examination; transcripts of testimony depositions, with exhibits, must be served on each adverse party within thirty (30) days after completion of taking the testimony; certified transcripts and exhibits must be filed, with notice of such filing served on each adverse party; and all notices of reliance must be submitted during the submitting party's assigned testimony period and must indicate generally the relevance the evidence and associate it with one or more issues.

Main briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b). An oral hearing is not required, but will be scheduled upon separate notice timely filed pursuant to Trademark Rule 2.129(a). Regarding briefs and oral hearings, *see* TBMP §§ 801-802.

**LEGAL RESOURCES AVAILABLE AT WEB PAGE**

For a general description of Board proceedings, *see* TBMP §102.03. Proceedings are governed by the Trademark Rules of Practice in Parts 2 and 7 of Title 37 of the Code of Federal Regulations. These rules, the Manual of Procedure (TBMP), information on Accelerated Case Resolution (ACR) and Alternative Dispute Resolution (ADR), and many Frequently Asked Questions, are available on the Board's web page, at:

https://www.uspto.gov/ttab. The parties should check the web page for important changes, announcements, etc., many of which apply to proceedings already in progress.

**PARTIES NOT REPRESENTED BY COUNSEL**

This proceeding is similar to a civil action in a federal district court and can be complex. The Board **strongly** advises all parties to secure the services of an attorney who is familiar with trademark law and Board procedure. The Board cannot aid in the selection of an attorney. *See* TBMP § 114.02. The Board requires

strict compliance with all applicable authorities whether or not the party is represented by counsel.

**NOTIFY BOARD OF ALL PENDING ACTIONS**

If the parties are, or during the pendency of this proceeding become, parties in another Board proceeding or a civil action involving the same or related marks, or involving any issues of law or fact which are also in this proceeding, they shall notify the Board immediately. *See* Trademark Rule 2.106(b)(3)(i). The Board will consolidate and/or suspend related Board proceedings, as appropriate. *See* Trademark Rule 2.117(c); TBMP §§ 510 and 511.

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1295075** |
|---|---|
| Filing date: | **07/03/2023** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding no. | 92082412 |
|---|---|
| Party | Defendant<br>Keeper Tax, INc. |
| Correspondence address | KEEPER TAX, INC.<br>22 VICKSBURG ST<br>SAN FRANCISCO, CA 94114<br>UNITED STATES<br>Primary email: paul@keepertax.com<br>314-400-8008 |
| Submission | Motion to Suspend for Civil Action |
| Filer's name | Mark R. Bagley |
| Filer's email | mark@tolpinlaw.com, docket@tolpinlaw.com |
| Signature | /Mark R. Bagley/ |
| Date | 07/03/2023 |
| Attachments | 2023-07-03 - TTAB motion to suspend.pdf(127808 bytes )<br>ExA - Jul 3 motion.pdf(1725591 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

In the matter of Registration No. 7,056,960
For the mark:  KEEPER
Registrant:  Keeper Tax, Inc.
_____

| | |
|---|---|
| KEEPER SECURITY, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    Cancellation No. 92082412 |
| | ) |
| KEEPER TAX, INC., | ) |
| | ) |
| Registrant. | ) |
| _____ | ) |

## REGISTRANT'S MOTION TO SUSPEND PROCEEDING

Pursuant to 37 C.F.R. §2.117,  Registrant Keeper Tax, Inc. ("Registrant") hereby moves for suspension of the present proceeding because a currently pending U.S. District Court action involving Registrant and Petitioner Keeper Security, Inc. ("Petitioner") will have a significant bearing on the substantive issues raised in the present proceeding.

The Petition for Cancellation seeks cancellation of Registrant's Registration No. 7,056,960 for the mark KEEPER for "tax filing services for self-employed individuals" in International Class 35.  Petitioner alleges that it owns superior rights in the mark KEEPER for "computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data," and that Registrant's mark creates a likelihood of confusion with the mark in Petitioner's own registration and related common law rights.

Several months prior to filing the present Petition for Cancellation, Petitioner filed a lawsuit against Registrant concerning the same subject matter.  That action is captioned *Keeper Security, Inc. v. Keeper Tax Inc.*, No. 1:23-cv-1043, in the United States District Court for the

Northern District of Illinois.  A copy of the complaint in that action, which was filed on February 21, 2023, is attached hereto as Exhibit A.

The present cancellation proceeding and the Northern District of Illinois action both turn on the same central factual questions related to whether Petitioner's services are similar enough to Registrant's services that their use of the same KEEPER mark is likely to cause confusion. Because the decisions of the district court in the Northern District of Illinois action would be binding on the Board, *see New Orleans Saints LLC v. Who Dat? Inc.*, 99 USPQ2d 1550, 1552 (TTAB 2011), it is appropriate to suspend the present proceeding and allow these disputed issues to be determined by the United States District Court for the Northern District of Illinois.

**WHEREFORE**, Registrant respectfully requests that this cancellation proceeding be suspended until a final determination is made in the Northern District Illinois action.

Dated: July 3, 2023

Respectfully submitted,

By:_____

Mark R. Bagley
TOLPIN & PARTNERS, PC
30 North LaSalle Street, Suite 1510
Chicago, Illinois 60602
Telephone: (312) 698-8971
Fax:        (312) 803-9602

*Attorney for Registrant*

2

Cancellation No. 92082412
Registrant's Motion to Suspend Proceeding

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Applicant's Motion to Suspend Proceeding was served by email upon Attorney for Petitioner, Dean D. Niro (dniro@vvnlaw.com) of Vitale, Vickrey, Niro, Solon & Gasey LLP, on this 3rd day of July, 2023.

_____
Mark R. Bagley
TOLPIN & PARTNERS, PC
30 North LaSalle Street, Suite 1510
Chicago, Illinois 60602
Telephone: (312) 698-8971
Fax:        (312) 803-9602

*Attorney for Registrant*

3

Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEEPER SECURITY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. |
| | ) | |
| KEEPER TAX INC., | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Keeper Security, Inc. ("Keeper"), complains of Keeper Tax Inc. ("Keeper Tax"), as follows:

1.      Keeper has used the trademarks KEEPER® in connection with its cybersecurity business since at least 2009.  Keeper has marketed, advertised, and promoted the KEEPER® trademark through the expenditure of significant time and effort over the years to establish extensive goodwill and consumer recognition in the KEEPER® trademark.

2.      Keeper Tax started using and introduced into the market the term "keeper" on its computer application, website domain, mobile application, and website content.

3.      Keeper Tax's use of the name "keeper" in association with its goods and services is willful infringement of the KEEPER® trademark and Keeper Tax is trading off the goodwill established in the mark.

4.      This Complaint includes claims for trademark infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1051 et seq. (the "Lanham Act"); for false designation of origin and unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); for trademark

dilution in violation of 15 U.S.C. § 1125(c); for state common law trademark infringement; and unfair competition.

## THE PARTIES

### Keeper Security, Inc.

5.      Keeper Security, Inc. is a Delaware corporation having its principal place of business located in Chicago, Illinois.

6.      Keeper is in the business of developing, marketing and selling cybersecurity software.  Keeper is a leading cybersecurity company that provides software and applications that protect the integrity of numerous businesses and consumers through safeguarding sensitive user information and mitigating the risk of data breaches.  Keeper utilizes a proprietary, secure and convenient password manager and digital vault to protect its customers' critical data and passwords.

7.      Keeper has created the world's most downloaded and preloaded password security and management solution for mobile devices and computers.

8.      Keeper sells a software product called "Keeper" for managing user passwords and private information. Keeper protects users against cybercriminals with a secure and convenient password manager. Users' passwords, logins, credit card numbers, bank accounts and other personal, sensitive, information are saved in a private digital vault that is encrypted and unbreakable.

9.      The KEEPER® trademark is associated with the Keeper products and applications sold on various platforms and internet portals.

10.     Keeper markets its products under the KEEPER® trademark.  Keeper's products have been downloaded by millions of online users and preloaded by global mobile operators and mobile device manufacturers who recognize that Keeper is a leader in cybersecurity and the leader

in password management.  Online users have come to associate the "Keeper" software product with Keeper and recognize that it is the leading product in password management.

11.     Keeper is the assignee and owner of the entire right, title and interest in the trademark "KEEPER", United Trademark Registration No. 3,965,190 (the "KEEPER®" trademark).  (Registration Certificate attached as Exhibit A).

12.     The KEEPER® trademark was registered with the United States Patent and Trademark Office ("USPTO") on May 24, 2011.

13.     The KEEPER® trademark was assigned to Keeper on November 21, 2011.

14.     Keeper has standing to sue for any damages and injunctive relief related to the KEEPER® trademark under the Lanham Act, Section 32(a).

### Keeper Tax Inc.

15.     Keeper Tax is a Delaware company with its principal place of business located in San Francisco, California.

16.     Keeper Tax provides an internet-based tax software and application for people with contracting and freelance income.

17.     Keeper Tax operates the website www.keepertax.com

18.     Keeper Tax seeks to compete with Keeper by providing internet-based services using the name "keeper."  Keeper Tax entered the market using the "keeper" name years after Keeper introduced its KEEPER® trademark into the market.

19.     Keeper Tax advertises and sells its products and applications on platforms such as the Apple App Store and Google Play Store, as well as other internet portals, using the term "keeper" in direct competition with the KEEPER® trademark.

**JURISDITION AND VENUE**

20.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b), 15 U.S.C. § 1121 and other applicable statutes as the claims arise from the Lanham Act.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

21.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Keeper resides in Illinois, Keeper Tax is a Delaware corporation residing in California and the amount in controversy exceeds $75,000.

22.     To the extent Keeper's claims arise from Illinois statutory and/or common law, this Court has proper ancillary jurisdiction and supplemental jurisdiction in accordance with 28 U.S.C. § 1367(a) in that the state law claims have a logical relationship to the aggregate core of operative facts relating to Keeper's claims under the Lanham Act.  The state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

23.     This Court has personal jurisdiction over Keeper because Keeper is a corporation conducting business in this state and is in this district.

24.     This Court has personal jurisdiction over Keeper Tax because Keeper Tax is a corporation conducting business in this state and in this district.

25.     Keeper Tax conducts business through the website www.keepertax.com.  Keeper Tax's products and applications are available for purchase through its website, including to Illinois residents of this judicial district.

26.     Keeper Tax has known of Keeper's intellectual property rights and continued to use the KEEPER® trademark to benefit from the goodwill and reputation of Keeper.  By doing so, Keeper Tax has intentionally caused harm to Keeper in this district.

27.     Keeper Tax has purposefully and willfully directed its intentional misuse and infringement of the KEEPER® trademark in the State of Illinois (where Keeper is located), with knowledge that Keeper's injury would occur in the State of Illinois.

28.     This Court has personal jurisdiction over Keeper Tax, as Keeper Tax is engaged in trademark infringement, unfair competition and trademark dilution directed at (and/or which has caused damage to) persons and entities residing in, located in or doing business in this district.

29.     Keeper Tax conducts business over www.keepertax.com, including with customers in this district.  Keeper Tax transacts business in the state of Illinois, and in this judicial district by, among other things, selling software and applications that provides tax services to residents of Illinois.

30.     Keeper Tax has purposefully availed itself of the privilege of conducting business in this judicial district and has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being sued in a court in Illinois.

31.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

32.     Keeper resides in the state of Illinois and conducts business in this jurisdiction.

33.     Keeper Tax conducts business through the website https://www.keepertax.com. Keeper Tax's products are available for purchase through this website, including to residents of this judicial district.

34.     Keeper tax has purposefully and willfully directed its intentional misuse and infringement of the KEEPER® trademark at the State of Illinois (where Keeper is located), with knowledge that Keeper's injury would be felt in the State of Illinois.

35.     Keeper Tax is an entity which is transacting business in Illinois and because a substantial part of the events giving rise to the claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been and is being carried out in the Northern District of Illinois.

## BACKGROUND OF FACTS

36.     United States Federal Trademark Registration No. 3,965,190 for the KEEPER® trademark is set forth below:



**The KEEPER® Trademark**

37.     The KEEPER® trademark has become incontestable due to Keeper's continuous use of the trademarks for over five years since the mark was granted federal registration on May

24, 2011. Keeper filed a Declaration of Incontestability with the USPTO of the KEEPER®
trademarks under Section 15.

38.     Keeper also owns broad common law rights to the KEEPER® trademark as a result
of its investment over the years in marketing, advertising and promotion. KEEPER® is symbolic
of extensive goodwill and customer recognition built-up through its significant expenditures of time
and effort by Keeper.

39.     Keeper maintains a website at www.keepersecurity.com.    The KEEPER®
trademark has been prominently displayed in association with Keeper's cybersecurity products:





40.     An example of the use of the KEEPER® trademark is set forth on its website
www.keepersecurity.com:



41.    The KEEPER® trademark is also used in connection with mobile devices:



42.    Keeper has won awards for innovation such as being named winner of the "Most Innovative in Endpoint Security Award," the "Hot Company in Identity and Access Management" and "Cutting Edge Security Company of the Year" awards during RSA Conference 2021.

43.     Keeper was granted awards for the CEO of the year, CTO of the year and "Hot Company of the Year" at the Global InfoSec Awards during the RSA Conference 2022.

44.     Keeper's products are the highest rated in the industry across G2, Trustpilot, PCMag and U.S. News & World Report. For the last several years, Keeper has received several InfoSec Awards from Cyber Defense Magazine for its cybersecurity enterprise software.

45.     Keeper has been named PC Magazine's Best Password Manager of the Year & Editors' Choice, PCWorld's Editors' Choice and is the winner of four G2 Best Software Awards and the InfoSec Award for Best Product in Password Management for SMB Cybersecurity.

46.     The KEEPER® trademark has been prominently displayed in association with the awards granted to Keeper, its products and applications.

47.     The Keeper product is available over the Internet and various "app" stores, including Apple's App Store. The Keeper product has received thousands of five-star ratings on various app stores. For example, the latest version has received a 4.9-star rating (out of 5 stars) among user reviews on Apple's App Store:





48.     The KEEPER® trademark appears in association with the Keeper product and with Keeper Security on application platforms such as the Google Play Store as demonstrated at: https://play.google.com/store/apps/details?id=com.callpod.android_apps.keeper.

49.     The KEEPER® trademark appears in association with the Keeper product and with Keeper Security on the Microsoft application platform:



50.     Annually, Keeper spends millions of dollars on marketing and advertising of the KEEPER® trademark and to promote its product and company via Google search, the Apple App Store, the Google Play Store, public relations, outdoor advertising and other digital media.

51.     Through Keeper's extensive marketing and advertising, Keeper has obtained high rankings in the various app stores and Google search to be the first application and/or company listed when searching the word "keeper."

52.     The promotion has worked, as Keeper is the first hit on a google search:



53.     The KEEPER® trademark is prominently displayed on outdoor billboards in 11 states including in this district:



54.     Keeper has also advertised on television. One of Keeper's 2014 television commercials is available on YouTube at: https://youtu.be/z2EPjDqDShA.

55.     The KEEPER® trademark has never been abandoned and the registration is in full force and effect and has become incontestable pursuant to 15 U.S.C. § 1065.

56.     The KEEPER® trademark was first used in commerce in 2009 in relation to computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data.

57.     The KEEPER® trademark has been associated with Keeper's computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data products since 2009.

58.     The KEEPER® trademark has achieved secondary meaning in the relevant market.

59.     The KEEPER® trademark is distinctive of the computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private

data products and, in the minds of the consumers, their primary significance serves to identify the source of the product and have become distinctive of the products.

60.    The KEEPER® trademark has become notorious and famous.

**Keeper Tax's Improper Use of the "keeper" Trademark**

61.    Keeper Tax is a service that helps independent contractors track work-related expenses that may qualify for tax deductions.

62.    Keeper Tax was co-founded Paul Koullick and David Kang.

63.    Keeper Tax has recently rebranded its product from Keeper Tax to just the name "keeper" in association with its products.

64.    The rebranding efforts using only the name "keeper" demonstrate that Keeper Tax recognizes the value of the KEEPER® trademark.  The rebranding is a willful effort by Keeper Tax to profit from the goodwill Keeper has established in the KEEPER® trademark.

65.    Keeper Tax maintains a website at www.keepertax.com.  The improper use of the term "keeper" by Keeper Tax is set forth on its website www.keepertax.com:





66.     Keeper Tax promotes its product using the term "keeper" in product advertisement:



(https://www.instagram.com/p/Cm6zHn_s4WM/?hl=en).

67.     Keeper Tax is using the term "keeper" on its products, domain name, mobile applications and webpage content with complete disregard for the KEEEEPER trademark.

68.     Keeper Tax has made a conscious and concerted effort to pass off its product as being associated with the KEEPER® trademark and using the KEEPER® trademark to trade its product.

69.     Keeper Tax competes with Keeper using the KEEPER® trademark.

70.     Keeper Tax's action amounts to the willful theft of the KEEPER® trademark.

### Evidence of Confusion Caused by Keeper Tax

71.     Keeper Tax competes directly with Keeper.

72.     The Keeper Tax "keeper" product is displayed next to the KEEPER® trademark in the Apple App Store when a search of the word "keeper" is entered:



73.     Similarly, the two products appear next to each other in the Google Play Store when the term "keeper" is entered into the search parameter:



74.     Keeper Tax, through the use of the "keeper" name, is attempting to skew the search results toward Keeper Tax's product and away from Keeper in the various app stores.

75.     Use of the term "keeper" by Keeper Tax is likely to cause confusion with the KEEPER® trademark.

76.     Keeper Tax, through the use of the "keeper" name, has adversely and materially impacted Keeper's sales of Keeper's own product in the app stores.   Additionally, Keeper Tax's actions have impacted the volume of website traffic and associated revenues of Keeper.

77.     Use of the term "keeper" by Keeper tax has caused actual confusion with the KEEPER® trademark.  There have been several instances of actual confusion between the Keeper Tax use of the "keeper" name and the KEEPER ®trademark.

78.     Keeper has received numerous calls and emails to its customer support team thereby confusing Keeper with the Keeper Tax product and company.  The instances of confusion are clearly related to Keeper Tax's use of the "keeper" mark.

79.     Keeper has recorded numerous instances where people have contacted Keeper requesting support for the Keeper Tax product.  This shows actual confusion due to Keeper Tax's use of the "keeper" mark.

80.     Keeper has also recorded instances where Keeper Tax customers have contacted Keeper complaining about the Keeper Tax product.  For example, Keeper received an email complaint stating: "I want a new keeper the one I have now doesn't respond waste of money."

81.     In addition, Keeper received an email stating: "Please delete my account and any and all personal information I have collected with Keeper Tax" and "I'd like to delete my keeper tax account altogether."  There have been several other instances where customers of Keeper Tax have contacted Keeper requesting that they delete their account due to the fact that they were upset with the Keeper Tax product.

82.     Instances of actual confusion between the Keeper Tax product and the KEEPER® trademark have increased recently.


### COUNT I: FEDERAL TRADEMARK INFRINGMENT
### (Lanham Act Section 32(a))

83.     Keeper incorporates all prior allegations as if set forth fully herein.

84.     This Court has jurisdiction over the subject matter of this claim, this being a claim of trademark infringement arising under the Trademark Laws of the United States as codified in 15 U.S.C. § 1051 et seq.

85.     Keeper owns United States Trademark Reg. No. 3,965,190 in the mark "KEEPER."

86.     The KEEPER® trademark is fanciful and arbitrary and is associated in the mind of the public exclusively with Keeper Security, Inc.

87.     Based on Keeper's extensive advertising, sales and the wide popularity of the KEEPER® mark, the KEEPER® trademark has obtained Federal Trademark Registration so that any product and advertisement bearing such trademarks is immediately associated by purchasers and the public as being a product of, and affiliated with Keeper Security, Inc.

88.     Keeper Tax copied or otherwise imitated the KEEPER® trademark in connection with selling, distributing and advertising Keeper Tax's products and applications.

89.     Keeper Tax's activities set forth herein constitute use in commerce of the KEEPER® trademark and are likely to cause confusion to consumers.

90.     Keeper Tax has used the "keeper" mark without Keeper's consent or authorization. Keeper Tax's use, including the sale and distribution of infringing products and applications in interstate commerce, has caused actual confusion and is likely to cause confusion and mistake in the minds of the public, leading the public falsely to believe that Keeper Tax's products and applications emanate or originate from Keeper, or falsely to believe that Keeper has approved, sponsored or otherwise associated itself with Keeper Tax.

91.     Keeper Tax has intentionally used the KEEPER® trademark in connection with its offering for sale, sale and distribution of goods associated therewith knowing that such trademark is Keeper 's exclusive property.

92.     Keeper Tax engaged in the activities involving the "keeper' name with the intent to confuse and deceive consumers into believing that Keeper Tax, and the goods it sells, are in some way sponsored by, or affiliated with or associated with Keeper or its products.

93.     Keeper Tax's unauthorized use of the KEEPER® mark as set forth herein has resulted in Keeper Tax unfairly benefiting from Keeper's advertising and promotion and profiting

from Keeper's reputation and its registered trademarks to the substantial and irreparable injury of the public, Keeper, the KEEPER® trademark and the substantial goodwill represented thereby.

94.     Keeper Tax's aforesaid acts constitute trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

95.     Keeper Tax's acts have caused, and will continue to cause, great and irreparable injury to Keeper, and unless such acts are restrained by this Court, Keeper Tax will continue such acts, thereby causing Keeper to continue to suffer great and irreparable injury.

96.     Keeper has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Keeper Tax in an amount to be determined at trial.


## COUNT II: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (Lanham Act Section 43(a))

97.     Keeper incorporates all prior allegations as if set forth fully herein.

98.     This Court has jurisdiction over the subject matter of this claim, this being a claim of unfair competition and false designation of origin arising under section 43(a) of the Lanham Act, codified in 15 U.S.C. § 1125(a).

99.     Keeper Tax is fully aware of the popularity of the entire KEEPER application and product line and the clear association of the KEEPER® trademark with the line of cybersecurity applications and products of Keeper.  Keeper Tax intentionally copied and offered in interstate commerce products that infringe the KEEPER® trademark with Keeper's products and application. Keeper Tax's use of the "keeper" name in association with its products and applications is confusingly similar in total image, appearance, and overall aesthetic look of the KEEPER® trademark.  As a result, there has been instances of actual confusion and, therefore, the public is, and is likely to be, confused by Keeper Tax's use of the "keeper" designation.

100.     Keeper Tax has used in commerce, and continues to use in commerce, the "keeper" designation to unfairly benefit from Keeper's success by selling the same products bearing the same name in this jurisdiction.  Keeper Tax could have selected alternative names.

101.     Keeper Tax has used Keeper's distinctive KEEPER® name designation on its infringing products with the express intent to pass off Keeper Tax's products as those of Keeper and to cause confusion and mistake, and to deceive and mislead the purchasing public into believing that Keeper Tax is authorized, sponsored, affiliated with or associated with Keeper, and to trade upon Keeper's reputation for high-quality and to improperly appropriate to itself Keeper's valuable trademark rights.

102.     Sales of infringing products having the "keeper" name made by Keeper Tax are likely to cause consumer confusion because of the similarity in appearance and look between Keeper Tax's and Keeper's products and applications.  Consumers will believe that Keeper Tax's products are either manufactured, licensed, affiliated with or sponsored by Keeper, or are being placed on the market with Keeper's consent and/or actual or implied authority.  As a result, Keeper has been and will continue to be irreparably injured by Keeper Tax's improper acts.

103.     Keeper Tax has willfully, deliberately and with predatory intent, created such confusion by copying and reproducing the distinctive KEEPER® trademark associated with Keeper's products and applications; and has advertised and sold, and threaten to advertise and sell, its products and applications so as to cause public confusion and deception.  Further, Keeper Tax's sales and offers for sale of products and applications bearing the "keeper" name have caused and threaten to cause Keeper the loss of its valuable goodwill and reputations for making and selling distinctive, unique and high-quality cybersecurity products under the "keeper" name.

104.     Keeper Tax's aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Keeper Tax's products as those of Keeper in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

105.     Keeper Tax's wrongful acts will continue unless enjoined by this Court.

106.     Keeper has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Keeper Tax in an amount to be determined at trial.

## COUNT III: TRADEMARK DILUTION
### (Federal Trademark Dilution)

107.     Keeper incorporates all prior allegations as if set forth fully herein.

108.     This Court has jurisdiction over the subject matter of this claim, this being a claim of trademark dilution arising under section 43(c) of the Lanham Act, codified in 15 U.S.C. § 1125(c).

109.     The KEEPER® trademark is distinctive, famous and widely recognized by the consuming public in the United States within the meaning of the Lanham Act.

110.     At this time, only Keeper Tax knows the full extent and duration of its infringement. Keeper Tax's actions have been and are willful and deliberate.

111.     Keeper's KEEPER® trademark was famous prior to the time when Keeper Tax's unlawful actions are believed to have begun.

112.     Keeper Tax's unlawful actions began long after Keeper's marks became famous, and Keeper Tax acted knowingly, deliberately and willfully with the intent to trade on Keeper's reputation and to dilute Keeper's KEEPER® trademark.

113.     When Keeper Tax's unlawful action began, Keeper's mark was widely recognized by the general consuming public of the United States as a designation of source of Keeper.

114.     For years, Keeper has advertised its products nationwide. Keeper's advertisements include print media, television ads and internet ads, which reach the general consuming public across the United States.

115.     Keeper also reaches the general public through internet channels such as YouTube. On YouTube, Keeper's username is "Keeper." There, Keeper publishes copies of its television ads and product features.

116.     Keeper's publicity also extends across the nation by way of third-party awards and publications.

117.     Keeper's products are available nation-wide, at least through the Google Play Store, the Microsoft store and Apple's App Store.

118.     Since the first use of the KEEPER® trademark, Keeper has spent substantial resources on advertising and developing brand recognition, including without limitation the above-mentioned examples. Keeper has received feedback showing that customers recognize its mark. By way of non-limiting example, Keeper's mark is recognized in third party publications, ratings for its software and comments posted to Keeper's YouTube page.

119.     Keeper Tax's intentional and unauthorized actions are likely to cause confusion mistake, or to deceive, mislead and/or defraud consumers to believe that the substandard products sold on Keeper Tax's website are genuine Keeper products. The actions complained of herein have diluted and will continue to dilute the KEEPER® trademark and is likely to impair the distinctiveness, strength and value of Keeper's marks, and injure the business reputation of Keeper and its trademark.

120. Keeper Tax's conduct has caused actual confusion and diluted the value of the Keeper marks. For example, Keeper's trademarks and business are negatively impacted when users of Keeper Tax's product bearing the "keeper" name have negative experiences with the Keeper Tax product.

121. Keeper Tax's conduct has caused trademark dilution of the KEEPER® trademark through the association arising from the similarity between the KEEPER® trademark and Keeper Tax's use of the term "keeper," which impairs the distinctiveness of the KEEPER® trademark.

122. Keeper Tax's conduct has caused trademark dilution of the KEEPER® trademark through the association arising from the similarity between the KEEPER® trademark and Keeper Tax's use of the term "keeper" which harms the reputation of the KEEPER® trademark.

123. Keeper Tax's wrongful acts will continue unless enjoined by this Court.

124. Keeper has suffered, and will continue to suffer, substantial and irreparable harm and damage as a result of Keeper Tax's dilution, in an amount to be determined at trial.


### COUNT IV: STATE COMMON LAW TRADEMARK INFRINGEMENT
### (State Common Law Trademark Infringement And Unfair Competition)

125. Keeper incorporates all prior allegations as if set forth fully herein.

126. This claim arises under the common law of this State relating to trademark infringement and unfair competition. This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

127. Keeper is the owner of all right, title and interest in and to the common law "keeper" trade name, designs, symbols and logos used by Keeper by virtue of its extensive manufacture and

sale of products bearing such trade names, trademarks, designations, designs, symbols and logos (collectively, Keeper's "Common Law Trademarks") as set forth in the preceding paragraphs of this Complaint. In particular, because of its enormous sales and publicity, Keeper's has acquired common law trademark rights in its "keeper" products and applications.

128.     The counterfeit and/or infringing products imported, advertised, distributed, offered for sale and sold by Keeper Tax incorporate matter constituting replicas and imitations of Keeper's Common Law Trademarks. Such unauthorized use by Keeper Tax of Keeper's Common Law Trademarks constitutes trademark infringement and unfair competition and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the products and to cause purchasers to believe such products are authentic products of Keeper when, in fact, they are not.

129.     Keeper Tax has willfully and intentionally misappropriated one or more of Keeper's Common Law Trademarks with the intent of causing confusion, mistake, and deception as to the source of its goods and with the intent to palm off its goods as those of Keeper and to place others in the position to palm off its goods as those of Keeper, and as such, Keeper Tax has committed trademark infringement and unfair competition under the common law.

130.     By such actions of infringing Keeper's Common Law Trademarks, Keeper Tax is improperly trading upon the enviable reputation and goodwill of Keeper and is impairing Keeper's valuable rights in and to such trademarks.

131.     Keeper is informed and believes and thereupon alleges that Keeper Tax committed the above alleged acts in conscious disregard of Keeper's rights, and Keeper is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of Illinois.

132.    Keeper has no adequate remedy at law. The conduct of Keeper Tax has caused and, if not enjoined, will continue to cause, irreparable damage to Keeper's rights in and to its trademarks, and to Keeper's businesses, reputations and goodwill.

## COUNT V – ILLINOIS DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS 510 ET SEQ)

133.    Keeper incorporates all prior allegations as if set forth fully herein.

134.    Keeper Tax has made a concerted effort to pass of its goods as those of Keeper through the use of the KEEPER® trademark.

135.    Keeper Tax's use of the "keeper" name has caused likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of the Keeper Tax products and applications.

136.    Keeper Tax's use of the "keeper" name has caused likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another.

137.    By reason of the foregoing acts, Keeper Tax has engaged in, and is continuing to engage in acts which pass off its own goods or services as those of Keeper and caused a likelihood of confusion (and actual confusion) or misunderstanding as to the source, sponsorship, approval, affiliation or connection with Keeper.

138.    Keeper has no adequate remedy at law. The conduct of Keeper Tax has caused and, if not enjoined, will continue to cause, irreparable damage to Keeper's rights in and to its trademarks, and to Keeper's businesses, reputations, and goodwill.

## COUNT VI – UNJUST ENRICHMENT

139.    Keeper incorporates all prior allegations as if set forth fully herein.

140.    By reason of the foregoing act, Keeper Tax has been unjustly enriched to the detriment of Keeper. Keeper Tax's retention of monies gained through its deceptive business practices, acts of deceit, and otherwise, would serve to unjustly enrich Keeper Tax and would be contrary to the interests of justice.

**PRAYER FOR RELIEF**

WHEREFORE, Keeper demands judgment against the Keeper Tax as follows:

A.    That the Court order that Keeper Tax, its officers, agents, directors, servants, employees, representatives, successors, and assigns and all persons, firms or corporations in active concert or participation with Keeper Tax, be immediately and permanently enjoined from:

(1)    directly or indirectly infringing Keeper 's trademark as described above in any manner including generally, but not limited to, copying, distributing, advertising, selling, and/or offering for sale any merchandise that infringes the KEEPER® trademark including without limitation Keeper Tax's products using the "keeper" name, and specifically distributing, advertising, selling and/or offering for sale unauthorized copies of the KEEPER® trademark or any other unauthorized goods that picture, reproduce, or utilize the likenesses of or which copy or bear a substantial similarity to any of Keeper's trademarks;

(2)    using the KEEPER® trademark and trade dress rights or marks confusingly similar thereto;

using the name "keeper" on or in association with any products;

advertising (over the Internet, through catalogs or otherwise), selling, importing, exporting, using, accepting orders for or offering to sell products in conjunction with, or under, the "keeper" name and appearance; engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead or deceive purchasers, Keeper Tax's customers and/or members of the public to believe that, the actions of Keeper Tax, the products sold by Keeper Tax or Keeper Tax itself are connected with Keeper, are sponsored, approved, or licensed by Keeper, or are in some way connected or affiliated with Keeper;

causing further confusion with and injury to Keeper 's reputation, business and the KEEPER® trademark and common law trademarks, including Keeper's name and likeness or other forms of advertisement and trademarks;

(3)     otherwise competing unfairly with Keeper in any manner;

(4)     diluting and infringing the KEEPER® trademark and damaging Keeper's goodwill, reputations and businesses.

B.     That Keeper be awarded damages in an amount sufficient to compensate it for the injuries it has sustained by reason of Keeper Tax's unlawful acts, including Keeper's loss of goodwill, loss of past and/or future sales and damages caused by Keeper Tax's acts of trademark and trade dress infringement, common law trademark infringement, unfair competition and trademark dilution, as well as for State common law trademark infringement, trademark dilution and unfair competition. That Keeper be awarded increased damages based upon the intentional and willful nature of Keeper Tax's conduct of the kind complained of

herein. That Keeper be awarded all profits received by Keeper Tax from the sale of products identified or advertised through the use of identical or confusingly similar designations of the KEEPER® trademark.

C.  That the Court issue an order requiring Keeper Tax to pay to Keeper such damages as Keeper has sustained as a consequence of Keeper Tax's infringement of the KEEPER® trademark and unfair competition and to account for all gains, profits, and advantages derived by Keeper Tax from the sale of its infringing merchandise bearing the KEEPER® trademark and that the award to Keeper be trebled as provided for under 15 U.S.C. § 1117; alternatively, that Keeper be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $1,000,000 for each trademark that Keeper Tax has willfully counterfeited and infringed.

D.  That the Court issue an order that Keeper recover the costs of this action together with reasonable attorneys' and investigators' fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

E.  That Keeper be awarded punitive damages for Keeper Tax's willful and malicious acts of common law unfair competition.

F.  That Keeper Tax be ordered to deliver up for destruction all advertisements, circulars, brochures and any other items in its possession, custody or control bearing the KEEPER® trademark or any other similar designations.

G.  That Keeper Tax be ordered to (a) prepare and send to its customers and the general public corrective statements approved by Keeper, correcting all false statements made and all misrepresentations made concerning the KEEPER® trademark; (b) to disclaim any association between Keeper Tax and Keeper and/or its products; and

(c) to recall and make reasonable efforts to obtain the return of any infringing or confusingly similar products from its customers.

H. That judgment be entered in favor of Keeper and against Keeper Tax on each claim made in the Complaint.

I. That the Court provide Keeper with such other and further relief as it deems just and proper, or that Keeper may be entitled to under the law.

## JURY DEMAND

A trial by jury is demanded on all issues triable to a jury in this case.

Respectfully submitted,

_____*/s/ Dean D. Niro*_____
Dean D. Niro
VITALE, VICKREY, NIRO, SOLON & GASEY LLP
311 S. Wacker Dr., Suite 2470
Chicago, IL 60606
Tel.:   (312) 236-0733
*dniro@vvnlaw.com*

*Attorney for Plaintiff,*
*Keeper Security, Inc.*

# EXHIBIT A



# United States of America

## United States Patent and Trademark Office

# keeper

**Reg. No. 3,965,190**
**Registered May 24, 2011**

**Int. Cl.: 9**

**TRADEMARK**

**PRINCIPAL REGISTER**

CALLPOD, INC. (ILLINOIS CORPORATION)
850 W. JACKSON BLVD, STE 260
CHICAGO, IL 60607

FOR: COMPUTER SOFTWARE FOR USE WITH COMPUTERS AND MOBILE TELEPHONES, FOR ELECTRONIC STORAGE AND ENCRYPTION OF PASSWORDS AND PRIVATE DATA, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-1-2009; IN COMMERCE 1-1-2009.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 3,719,919.

SEC. 2(F).

SER. NO. 85-118,630, FILED 8-30-2010.

BARBARA A. GOLD, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

## TRADEMARK ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNS THE ENTIRE INTEREST AND THE GOODWILL |

**CONVEYING PARTY DATA**

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| Callpod Inc. | | 11/01/2011 | CORPORATION: ILLINOIS |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | Keeper Security, Inc. |
| Street Address: | 850 W Jackson Blvd |
| Internal Address: | Suite 400 |
| City: | Chicago |
| State/Country: | ILLINOIS |
| Postal Code: | 60607 |
| Entity Type: | CORPORATION: ILLINOIS |

**PROPERTY NUMBERS Total: 3**

| Property Type | Number | Word Mark |
|---|---|---|
| Registration Number: | 3995241 | PASSWORD KEEPER |
| Registration Number: | 3965190 | KEEPER |
| Registration Number: | 3719919 | @ KEEPER |

**CORRESPONDENCE DATA**

Fax Number: (312)829-2971
Phone: 312-829-2680
Email: accounting@callpod.com
*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent via US Mail.*
Correspondent Name: Keeper Security Inc.
Address Line 1: 850 W Jackson Blvd
Address Line 2: Suite 400
Address Line 4: Chicago, ILLINOIS 60607

| NAME OF SUBMITTER: | Darren Guccione |
|---|---|

OP $90.00 3995241

| Signature: | /1234/ |
|---|---|
| Date: | 11/21/2011 |

Total Attachments: 10
source=ContributionAgreementKeeperCallpod#page1.tif
source=ContributionAgreementKeeperCallpod#page2.tif
source=ContributionAgreementKeeperCallpod#page3.tif
source=ContributionAgreementKeeperCallpod#page4.tif
source=ContributionAgreementKeeperCallpod#page5.tif
source=ContributionAgreementKeeperCallpod#page6.tif
source=ContributionAgreementKeeperCallpod#page7.tif
source=ContributionAgreementKeeperCallpod#page8.tif
source=ContributionAgreementKeeperCallpod#page9.tif
source=ContributionAgreementKeeperCallpod#page10.tif

*Trademark Trial and Appeal Board Electronic Filing System. https://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA1296874** |
|---|---|
| Filing date: | **07/12/2023** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding no. | 92082412 |
| Party | Plaintiff<br>Keeper Security, Inc. |
| Correspondence address | DEAN D. NIRO<br>VITALE, VICKREY, NIRO, SOLON & GASEY LLP<br>311 S. WACKER DR., SUITE 2470<br>CHICAGO, IL 60606<br>UNITED STATES<br>Primary email: dniro@vvnlaw.com<br>Secondary email(s): swierk@vvnlaw.com, nniro@vvnlaw.com<br>312-236-0733 |
| Submission | Other Motions/Submissions |
| Filer's name | Dean D. Niro |
| Filer's email | dniro@vvnlaw.com, swierk@vvnlaw.com |
| Signature | /Dean D. Niro/ |
| Date | 07/12/2023 |
| Attachments | Response_to_Mot_to_Suspend.pdf(920975 bytes ) |

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

| | | |
|---|---|---|
| In re Registration No. 7,056,960 | ) | |
| | ) | |
| KEEPER SECURITY, INC., | ) | |
| | ) | Cancellation No.: 92082412 |
| Petitioner, | ) | |
| v. | ) | |
| | ) | |
| KEEPER TAX, INC., | ) | |
| | ) | |
| Registrant. | | |

**PETITIONER'S OPPOSITION TO REGISTRANT'S**
**MOTION TO SUSPEND PROCEEDING**

Petitioner Keeper Security, Inc. ("Petitioner") responds in opposition to Registrant Keeper Tax, Inc.'s ("Registrant") motion for suspension of the pending Cancellation Proceeding. Petitioner will be unjustly prejudiced if the Trademark Trial and Appeal Board ("TTAB") were to grant Registrant's motion to suspend the proceeding because it would allow Registrant to maintain registration of its confusingly similar and improperly obtained KEEPER mark. Further, the parties are not litigating the validity of the Registrant's "keeper" trademark and cancellation of the Registrant's mark is not a remedy sought in the litigation pending in the Northern District of Illinois (the "Illinois Litigation"). The Illinois Litigation involves infringement of Petitioner's mark. Thus, the Cancellation will proceed regardless of the outcome in the Illinois Court.

Petitioner owns the trademark "Keeper," Registration No. 3,965,190 for "computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data." (the "KEEPER® Trademark"). The KEEPER® Trademark was granted federal registration on May 24, 2011. Petitioner first began using the KEEPER®

- 1 -

Trademark on least January 1, 2009. The KEEPER® Trademark has never been abandoned and the registration has been in full force since 2011. The KEEPER® Trademark has become incontestable pursuant to 15 U.S.C. § 1065. Petitioner filed a Declaration of Incontestability with the USPTO of the KEEPER® Trademark. Keeper has enjoyed the registration in its KEEPER® Trademark for over eleven years prior to Registrants willful attempt to capitalize on the goodwill Petitioner built in the KEEPER® Trademark.

The Illinois Litigation involves the likelihood of confusion between Registrant's use of the term "keeper" and the KEEPER® Trademark. For example, Registrant's goods and services are displayed next to products bearing the KEEPER® Trademark in the Google App. Store:



(See Cancellation Petition ¶38). Additionally, Registrant's "keeper" product is displayed next to products bearing the KEEPER® Trademark in the Apple App Store when a search of the word "keeper" is used:



(See Cancellation Petition ¶37). Registrant's use of the name "keeper" is confusingly similar to the KEEPER® Trademark. Registrant's use of the name "keeper" is identical to the KEEPER® Trademark and used on and in connection with goods/services similar to the KEEPER® Trademark.

Petitioner filed a case in the United States District Court for the Northern District of Illinois asserting a claim for infringement of the Keeper® Trademark through Registrant's use of the name "keeper," among other claims, Keeper Security, Inc. v. Keeper Tax Inc., No. 1:23-cv-1043. The validity of Registrant's '960 Registration is not at issue in the Illinois Litigation. The only argument registrant makes is that both the Illinois case and this petition for cancellation turn on the same central factual questions, namely, whether Petitioner's services are similar enough to Registrant's services that Registrant's use of the same KEEPER mark is likely to cause confusion. (Registrant's Motion to Suspend Proceedings p. 2). The Illinois case will not result in the cancellation of the '960 Registration. *RLP Ventures, LLC v. All Hands Instruction NFP*, No. 19 C 3276, 2020 U.S. Dist. LEXIS 51213, at *13 (N.D. Ill. Mar. 23, 2020). At most, it will result in a finding that Registrant's use of the KEEPER mark is likely to have caused consumer confusion

with the KEEPER® Trademark, resulting in an injunction prohibiting the use of the KEEPER® Trademark. This cancellation will proceed regardless of the ruling of the Illinois Court as there will have been no ruling that the '960 Registration should be cancelled. Registrant failed to provide any explanation as to why a stay is necessary when balanced against the blatant infringement of the KEEPER® Trademark and contemporaneous registration of their own '960 Registration.

On May 16, 2023, Registrant was issued United States Trademark Registration No. 7,056,960 for "tax filing services for self-employed individuals." (the "960 Registration"). The KEEPER® Trademark is identical to the '960 Registration. The potential harm from the '960 Registration is significant.

Petitioner filed this cancellation proceeding on May 25, 2023; immediately after the '960 Registration issued. The threat to Petitioner is real. The potential for undue prejudice against Petitioner substantially outweighs Registrant's desire to suspend the pending cancellation proceeding. The United States Patent and Trademark Office ("USPTO") currently recognizes the '960 Registration as a valid trademark. The '960 Registration ("keeper") is identical in name to Petitioner's "Keeper" trademark. Petitioner's registration predates Registrant by over eleven years. During that time, Petitioner invested in and established substantial goodwill in the KEEPER® Trademark. (See Cancellation Petition ¶¶15-19). Any delay in the proceedings for cancellation of the '960 Registration will create the potential for undue prejudice regarding the goodwill that Petitioner has developed in the KEEPER® Trademark.

Registrant will also benefit from a suspension of the cancellation proceeding by improperly maintaining a federally recognized trademark. The longer Registrant is entitled to claim federal registration, the greater the opportunity it will have to expand its business and capitalize on the

goodwill Petitioner built in the KEEPER® Trademark. Moreover, Registrant provided no explanation for how the delay will not prejudice Petitioner.

On November 10, 2021, Registrant filed an application for the name "Keeper Tax." During the prosecution of the "Keeper Tax" trademark application, a USPTO examiner recommended that Registrant amend the requested trademark to "keeper." There is no explanation for why the recommendation was made by the Examiner. The examiner's suggested revision, and the subsequent granting of the '960 Registration has created the potential for consumer confusion between the identical registered marks. Through this petition, the TTAB can cancel the '960 Registration.

Under 37 C.F.R. § 2.117(a), "[w]henever it shall come to the attention of the Trademark Trial and Appeal Board that a civil action, another Board proceeding, or an expungement or reexamination proceeding may have a bearing on a pending case, proceedings before the Board **may** be suspended until termination of the civil action." (Emphasis added). The TTAB has denied motions to suspend proceedings, emphasizing that the language used in § 2.117(a) is "permissive," and that suspension is not a requirement, but rather a discretionary decision. *Auritt v. Take A Shower LLC*, 2019 TTAB LEXIS 155, *4-5 (Trademark Trial & App. Bd. February 11, 2019).

WHEREFORE, Petitioner respectfully requests that the TTAB deny Registrant's motion to suspend this cancellation proceeding.

July, 12, 2023                          Respectfully submitted,

                                        _____/Dean D. Niro/_____
                                        Dean D. Niro
                                        VITALE, VICKREY, NIRO, SOLON & GASEY LLP
                                        311 S. Wacker Dr., Suite 2470
                                        Chicago, IL 60606
                                        Tel.:   (312) 236-0733
                                        dniro@vvnlaw.com

                                        *Attorney for Petitioner, Keeper Security, Inc.*

- 5 -

## PROOF OF SERVICE

I hereby certify that a true and complete copy of the foregoing

## PETITIONER'S OPPOSITION TO REGISTRANT'S
## MOTION TO SUSPEND PROCEEDING

has been served on Keeper Tax, Inc. by forwarding said copy on July 12, 2023, via email to:

Mark R. Bagley (mark@toplinlaw.com)
Tolpin & Partners, PC
30 N. LaSalle Street, Suite 1510
Chicago, IL 60602

*/Dean D. Niro/*
*Attorney for Petitioner, Keeper Security, Inc.*

| THIS ORDER IS NOT A PRECEDENT OF THE TTAB | UNITED STATES PATENT AND TRADEMARK OFFICE |
|---|---|

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

RK

August 28, 2023

Cancellation No. **92082412**

*Keeper Security, Inc.*

*v.*

*Keeper Tax, Inc.*

**Yong Oh (Richard) Kim, Interlocutory Attorney:[1]**

This matter comes up on Respondent's motion[2] (filed July 3, 2023) to suspend this proceeding in favor of a civil action between the parties.[3] Petitioner has contested the motion.[4]

---

[1] Citations to the record or briefs in this order also include citations to the publicly available documents on TTABVUE, the Board's electronic docketing system. The number(s) preceding "TTABVUE" corresponds to the docket entry number(s) and the number(s) following "TTABVUE" refers to the page number(s) of that particular docket entry, if applicable.

[2] 4 TTABVUE. In view of the filing of the motion for suspension on behalf of Respondent, counsel's appearance has been noted and Respondent's correspondence information has been accordingly updated. *See Jacques Moret Inc. v. Speedo Holdings B.V.*, 102 USPQ2d 1212, 1216 (TTAB 2012) (law firm that filed motion recognized as counsel of record for the party on whose behalf the motion was filed).

[3] *Keeper Security, Inc. v. Keeper Tax Inc.*, Civil Action No. 1:23-cv-01043 in the United States District Court for the Northern District of Illinois, Eastern Division.

[4] 5 TTABVUE.

Cancellation No. 92082412

## Background

On May 25, 2023, Petitioner filed a petition for cancellation against Registration No. 7056960 for KEEPER in standard characters for "tax filing services for self-employed individuals" in International Class 35. As grounds for the petition, Petitioner has asserted claims of priority and likelihood of confusion and dilution based on common law use of and federal registration[5] for KEEPER for "computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data" in International Class 9.[6] Pursuant to the schedule in the notice of institution, Respondent was allowed until July 4, 2023, to answer the petition for cancellation.[7]

On July 3, 2023, Respondent filed the present motion for suspension.

## Discussion

Trademark Rule 2.117(a), 37 C.F.R. § 2.117(a), provides as follows:

> (a) Whenever it shall come to the attention of the Trademark Trial and Appeal Board that a party or parties to a pending case are engaged in a civil action or another Board proceeding which may have a bearing on the case, proceedings before the Board may be suspended until termination of the civil action or the other Board proceeding.

Accordingly, the Board's well-settled policy is to suspend proceedings when a party is involved in a civil action which may have a bearing on the Board case. *See, e.g., New Orleans La. Saints LLC v. Who Dat?, Inc.*, 99 USPQ2d 1550, 1552 (TTAB 2011); *Gen. Motors Corp. v. Cadillac Club Fashions Inc.*, 22 USPQ2d 1933, 1937

---

[5]  Registration No. 3965190.

[6]  In its petition for cancellation, Petitioner incorrectly classifies the goods in International Class 35. 1 TTABVUE 4.

[7]  2 TTABVUE 3.

2

Cancellation No. 92082412

(TTAB 1992). It is not necessary that the parties, the issues, or the relief sought in the civil action and the Board proceeding be identical or that the civil action be dispositive of the Board proceeding.

In opposing suspension, Petitioner argues that the "validity of [the involved registration] is not at issue" in the civil action and therefore "will not result in the cancellation of the … [r]egistration."[8] However, there is no requirement that the civil action be dispositive of the Board proceeding. Rather, by the plain terms of Trademark Rule 2.117(a), suspension of this proceeding is proper where the civil action "may have a bearing on the case." Here, not only are the parties also parties to the civil action in the same positions as plaintiff and defendant, there are questions of law and fact that are common to both the Board proceeding and the civil action since Petitioner's claims of infringement, unfair competition and dilution in the civil action concern the very marks that are the subject of this cancellation proceeding. *See Other Tel. Co. v. Conn. Nat'l Tel. Co.*, 181 USPQ 125, 126-27 (TTAB 1974) (finding that determination of infringement and unfair competition in civil action will directly bear on likelihood of confusion claim in Board proceeding). Moreover, since Petitioner relies on its common law use of and federal registration for KEEPER in both the civil action and the Board proceeding, any defense relating thereto that is available to Respondent herein will likely be asserted in the civil action.

---

[8]   5 TTABVUE 4.

3

Cancellation No. 92082412

Finally, since the Board's jurisdiction is a limited one, *see Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, 100 USPQ2d 1904, 1907 (TTAB 2011) (Board's jurisdiction limited to determining the right to register), neither judicial economy nor an economical disposition of the parties' dispute will be achieved by allowing this matter to proceed in parallel with or over the civil action. *See Am. Bakeries Co. v. Pan-O-Gold Baking Co.*, 650 F.Supp. 563, 2 USPQ2d 1208, 1211 (D. Minn. 1986) (stay of district court action more likely to prolong dispute than lead to its economical disposition where the district court action includes claims which cannot be raised before the Board). Thus, the Board sees little to be gained in allowing this matter to proceed in view of the pending civil action.

**Decision**

Since the Board finds that the civil action may have a bearing on this proceeding, Respondent's motion for suspension is hereby **GRANTED**. Proceedings herein are **SUSPENDED** pending final disposition of the civil action.[9]

Within **TWENTY DAYS** after the final determination of the civil action, the parties shall so notify the Board and call this case up for appropriate action. Such notice should include a copy of any final order or final judgment issued in the civil action.

---

[9]  A proceeding is considered to have been finally determined when an order or ruling that ends litigation has been rendered, and no appeal has been filed, or all appeals filed have been decided and the time for any further review has expired. The expiration of any further review includes the time for petitioning for rehearing or U.S. Supreme Court review. The Board will not resume proceedings until after the time for seeking such review has expired, a decision denying or granting such review has been rendered, and any further review has been completed.

4

Cancellation No. 92082412

During the suspension period, the parties shall notify the Board of any address changes for the parties or their attorneys.

* * *

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

August 30, 2023

Cancellation No. 92082412

*Keeper Security, Inc.*

*v.*

*Keeper Tax, INc.*

**Lalita Webb, Paralegal Specialist:**

It has come to the Board's attention that Respondent did not receive a copy of the Board's August 28, 2023 order. 6 TTABVUE. In view thereof, the Board's August 28, 2023 order is being remailed to Respondent. An electronic version of the order is viewable on TTABVUE at http://ttabvue.uspto.gov/ttabvue/.

### U.S. Counsel Requirement

Effective August 3, 2019, the USPTO amended its rules to require all practitioners qualified under § 11.14(a) to be an active member in good standing and to provide the name of a state in which he or she is an active member in good standing; the date of admission to the bar of the named state; and the bar license number, if one is issued by the named state. 37 C.F.R. § 2.17(b)(3).

Accordingly, Respondent is required to provide the information above using the Change of Address form in ESTTA. The bar information entered on the ESTTA

Cancellation No. 92082412

Change of Address form will be masked from TTABVUE.

Proceedings otherwise remain suspended.

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

August 28, 2024

Cancellation No. 92082412

*Keeper Security, Inc.*

> *v.*

*Keeper Tax, Inc.*

**Lalita Webb, Paralegal Specialist:**

The parties are allowed until **thirty days** from the date of this order in which to inform the Board of the status of the civil action which occasioned the suspension of this proceeding. If no response to this order is received from either party, the Board will resume proceedings and reset dates, as appropriate.

Proceedings otherwise remain suspended pending a response to this order.

Furthermore, the parties should notify the Board of any address or email address changes for the parties or their attorneys.